Charles Albert FISCUS, Jr., Plaintiff,

v.

**CITY OF ROSWELL, Detective Alex Dukas, individually and as a detective for the City of Roswell Police Dept., and Jerry L. King, individually and in his capacity as Chief of Police for the City of Roswell, Defendants.**

Civ. A. No. 1:92–CV–843–CAM.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 21, 1993.

Sonja L. Salo, Office of Sonja L. Salo, Atlanta, GA, for plaintiff.

J. Anderson Davis, Hendrick Lafayette Cromartie, III, Brinson Askew Berry Siegler, Richardson & Davis, Rome, GA, for defendants.

### ORDER OF COURT

MOYE, District Judge.

This case comes before the Court on cross-motions for summary judgment filed by the plaintiff and defendants, each opposed by the other party. For the reasons which follow, the Court grants summary judgment for defendants on counts I, II, and IV of plaintiff's complaint and amended complaint. The Court also declines to exercise its supplemental jurisdiction as to count III of the complaint, which is dismissed.

The complaint in this case was brought pursuant to 42 U.S.C. §§ 1981, 1983 and 1988 as well as the 4th, 8th and 14th Amendments to the United States Constitution. Jurisdiction is predicated upon 28 U.S.C. §§ 1331 and 1332(1), (2), (3) and (4), as well as the Court's supplemental jurisdiction.

Count one of the complaint alleges that defendant Detective Alex Dukas, violated plaintiff's constitutional rights under the 4th and 14th Amendments because he failed to bring plaintiff before a judicial officer within 48 hours for a probable cause hearing. Defendant is sued in both his individual and official capacities. Plaintiff seeks punitive and compensatory damages in the amount of $100,000 plus attorneys fees and costs.

Count two alleges that Dukas's actions were taken pursuant to a policy, custom or practice of the City of Roswell to issue warrants without a probable cause hearing and to detain persons under a warrant without a probable cause hearing. Plaintiff seeks compensatory damages of $100,000 against the City, plus attorneys fees and costs.

Count three of the complaint alleges intentional infliction of emotional distress, false imprisonment and false arrest under Georgia law. Plaintiff seeks judgment against all defendants for compensatory damages of $100,000 plus attorneys fees and costs.

Finally, count four of the amended complaint alleges that the failure or refusal of the Chief of Police for the City of Roswell, Jerry L. King, to bring plaintiff before a judicial officer within 24 hours resulted in plaintiff's continued incarceration. Moreover, King knew of this policy, practice or custom and took no steps to end such practices, has not disciplined the officers who engage in it, has not effectively trained the officers regarding the proper constitutional and statutory limits of their authority, thus violating plaintiff's constitutional rights under the 4th, 8th and 14th Amendments to the Constitution.[1] King is sued in both his individual and official capacities. For these violations plaintiff seeks compensatory damages of $100,000 plus attorneys fees and costs against defendant King.

### STANDARDS ON MOTION FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide that summary judgment "shall be rendered ... [when] there is no genuine issue as

---

1. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the placed to be searched, and the persons or things to be seized." U.S. Const.Amend. IV.

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const.Amend. VIII.

"[N]or shall any State deprive any person of life, liberty, or property, without due process of law...." U.S. Const.Amend. XIV, § 1.

to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears "the initial responsibility of informing the district court of the basis for its motion, identifying those portions of ... [the record] 'together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 159–60, 90 S.Ct. 1598, 1609–10, 26 L.Ed.2d 142 (1970). *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437–38 (11th Cir.1991). The movant's failure to meet this initial burden ends the inquiry and summary judgment should be denied. The non-moving party bears no burden at this juncture.

However, once the initial burden has been met the "burden shift[s] to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). At this point, "the non-moving party [must] go beyond the pleadings and by affidavits ... or by the 'depositions[,] answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Russ v. International Paper Co.*, 943 F.2d 589, 592 (5th Cir.1991) (quoting *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553), *cert. denied*, —— U.S. ——, 112 S.Ct. 1675, 118 L.Ed.2d 393 (1992). *Accord Four Parcels of Real Property*, 941 F.2d at 1437–38.

In determining whether the moving party has met its burden, the Court views the evidence in the light most favorable to the party opposing the motion. *Adickes*, 398 U.S. at 158–59, 90 S.Ct. at 1608–09. In order to defeat a motion for summary judgment, the non-moving party need only present evidence "from which a jury might return a verdict in his favor." *Samples ex rel. Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir.1988). However, denials or allega-

tions by the non-moving party in the form of legal conclusions which are unsupported by any specific facts have no probative value, and, thus, are insufficient to create issues of material fact that would preclude summary judgment. *Broadway v. City of Montgomery*, 530 F.2d 657, 660 (5th Cir.1976).[2] Finally, whether facts are material is determined by the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## FACTS

The undisputed facts show that on May 29, 1991 at approximately 11:05 p.m. defendant Dukas was contacted by the Roswell Police Department regarding an apparent theft at an automatic teller machine (ATM) at the First Union Bank in Roswell, Georgia. He went to the bank and took statements from bank employees. He was advised by Branch Manager Connie Bryant that she and Branch Manager Anne Kuuskvere were working on a problem at approximately 7:00 p.m. when a white male, 300 lbs., 6 feet tall, with dark brown greasy hair, wearing a burgundy colored short-sleeved shirt and blue or black pants entered the bank through the front door where he had used his own key to enter. He stated to them that he was from Pinkerton Security and was there to service the ATM.

Defendant Dukas was advised by an employee of Pinkerton Security that the physical description given by the two bank employees "fit" plaintiff. Plaintiff was called at home, and asked to come to the bank. When plaintiff arrived at the bank, he advised Dukas that he had not been on duty that evening. Detective Dukas decided to conduct a "show-up" line up. Branch Managers Bryant and Kuuskvere each identified the plaintiff as the man who had let himself in earlier that evening while they had been working late.

Defendant Dukas arrested plaintiff at approximately 4:00 a.m. on May 30, 1991 and charged him with theft by taking. Plaintiff was arrested without a warrant. Thereafter,

---

**2.** In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), the Court of Appeals for the Eleventh Circuit adopted as precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981.

Dukas took plaintiff to the police station and booked him.

On the following day, May 30, 1991, Detective Dukas, ex parte, and in plaintiff's absence, went before Judge Ted E. Barner, Municipal Court of Roswell, and obtained a warrant for plaintiff's arrest.[3] No preliminary hearing was scheduled and the plaintiff was held in the Roswell City Jail without bond.

On May 30, 1991, Judge Maurice Hilliard, Jr. also "conducted a first appearance/bond probable cause hearing in Captain Thorn's office" at the City of Roswell Jail. The affidavits of James M. Thorn, Captain of the Administrative Services Division of the Roswell Police Department, and Ricky Padgett, Court Services Investigator for the City of Roswell, reveal that they were also present during Mr. Fiscus's hearing. Although plaintiff disputes that it was Judge Hilliard before whom he appeared, he candidly admits in his deposition that he did appear before a judge, albeit briefly, although he has little recollection of what was said during that proceeding. Fiscus deposition at 49. This testimony is insufficient to create an issue of fact as to whether such hearing took place, or as to what occurred. *Broadway v. City of Montgomery*, 530 F.2d at 660. Plaintiff does recall appearing before Judge Hilliard for a later proceeding. Fiscus deposition at 49.

According to Judge Hilliard's sworn affidavit, during the proceeding on May 30, 1991, he informed Mr. Fiscus of the charges against him, his right to remain silent and that any statement he made could be used against him, his right to an attorney, either appointed or retained, determined whether or not plaintiff had hired an attorney and advised him how to make application for an appointed attorney. Judge Hilliard also advised plaintiff of his right to a preliminary or probable cause hearing, set bond in the amount of $16,500 and advised plaintiff that a preliminary hearing was scheduled for June 20, 1991. Judge Hilliard's affidavit states

that he reviewed the "fact sheet, the City of Roswell ticket form which was sworn to by Detective Dukas, the Incident Report prepared by Officer Paul Nadeau, the arrest/booking report and Mr. Fiscus's criminal history." He further affirmed: "I believe that probable cause existed, especially since there were two (2) eyewitnesses who positively identified Mr. Fiscus."

The Court notes that what later occurred during plaintiff's criminal case is subject to dispute. However, for purposes of summary judgment, the foregoing facts are sufficient for the Court to render a decision.

## LEGAL DISCUSSION

■ There appears to be no serious contention that defendant Dukas did not, in fact, have probable cause and exigent circumstances justifying the warrantless arrest of Mr. Fiscus. There is no dispute as to the eye witnesses identification of plaintiff, or the circumstances thereof. The Court finds such probable cause and exigent circumstances clearly existed at that time, based upon the undisputed facts of record here. Thus, the precise and only issue before this Court is whether plaintiff was held unlawfully following his arrest, **because** of a failure to receive a prompt judicial determination of probable cause, in violation of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution. The Court begins by reviewing the cases of *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), and *County of Riverside v. McLaughlin*, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991).

In *Gerstein*, the United States Supreme Court held "that the Fourth Amendment requires a judicial determination of probable cause **as a prerequisite to extended restraint of liberty following arrest.**" *Gerstein*, 420 U.S. at 114, 95 S.Ct. at 863. Such a determination is addressed only to the pretrial **custody** of the defendant. In so deciding, the Court made clear that the probable cause determination is not a critical

---

3. There is some dispute about whether the arrest warrant was issued on May 30, 1991 or May 31, 1991. The Court assumes, without deciding, that the warrant was issued on May 30, 1991. However, as between the two dates, the probable cause determination occurred within 48 hours, and the difference thus, is immaterial. (*See* legal discussion *infra*).

stage in the prosecution of a criminal case and therefore, "adversary safeguards are not essential for the probable cause determination required by the Fourth Amendment." *Id.* at 120, 95 S.Ct. at 866. For instance, appointed counsel is not required. *Id.* at 122, 95 S.Ct. at 867. Moreover, the Court expressly countenanced the use of such traditional and "informal modes of proof," *id.,* as hearsay and written testimony in determining whether there exists probable cause to believe the suspect has committed a crime.

Finally, the Court distinguished between a nonadversarial probable cause determination required by the Fourth Amendment and a preliminary hearing, as was available under Alabama Law in that case. *Id.* Under Alabama law, the "function of the preliminary hearing was to determine whether the evidence justified *charging* the suspect with an offense." *Id.* at 123, 95 S.Ct. at 867 (emphasis added).

> "Second, Alabama allowed the suspect to confront and cross-examine prosecution witnesses at the preliminary hearing. The Court noted that the suspect's defense on the merits could be compromised if he had no legal assistance for exploring or preserving the witness' testimony."

*Id.* The Court concluded by recognizing that in a nonadversarial determination of probable cause "[t]his consideration does not apply when the prosecution is not required to produce witnesses for cross-examination." *Id.*

Some sixteen years later the High Court revisited the issue of probable cause determinations in *County of Riverside,* 500 U.S. at ——, 111 S.Ct. at 1661, this time to "articulate more clearly the boundaries of what is permissible under the Fourth Amendment," *id.* at ——, 111 S.Ct. at 1670, and as required by *Gerstein.* The Court began by recognizing, as it had in *Gerstein,* that states have systems of criminal procedure which differ greatly. *Id.* at ——, 111 S.Ct. at 1668.

> "Our purpose in *Gerstein* was to make clear that the Fourth Amendment requires every State to provide prompt determina-

tions of probable cause, but that the Constitution does not impose on the States a rigid procedural framework. Rather, individual States may choose to comply in different ways."

*Id.*

Explaining that the Fourth Amendment does not require an immediate determination of probable cause once the administrative steps have been completed, the Court determined that, generally, a jurisdiction which provides a probable cause determination within 48 hours of arrest would comply with the promptness requirement of *Gerstein.* *Id.* at ——, 111 S.Ct. at 1670. Nonetheless, a particular probable cause determination occurring within 48 hours could be constitutionally infirm if "delayed unreasonably," *id.,* for such purposes as "gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." *Id.*

The Supreme Court's decision in *County of Riverside* did not alter the substantive requirements of a probable cause determination necessitated by the Fourth Amendment and enunciated in *Gerstein.* Rather, the Court endeavored to announce a bright-line test which would permit states and other governmental entities a degree of certainty in establishing procedures in criminal cases which comply with constitutional mandates. *Id.*

Much of the confusion in this case arises from terminology. For example, plaintiff's defense counsel previously opined that the terms commitment hearing, preliminary hearing, and probable cause hearing all mean the same thing under Georgia law. *See* doc. 22, defendants' motion for summary judgment, exhibit I at 23. This may be so. However, the issue before this Court is not what Georgia law requires, but rather, whether the procedures afforded plaintiff under Georgia law comply with what is required under the Fourth Amendment to the United States Constitution.[4] And, although

---

4. Any claim under Georgia law directed to the facial sufficiency of the arrest warrant or, indeed, any other Georgia criminal procedure to which plaintiff may have been entitled does not affect the federal constitutional issue before this Court.

Plaintiff's reliance on *Garmon v. Lumpkin County, Georgia,* 878 F.2d 1406, 1408–09 (11th

plaintiff argues that he was entitled to a probable cause hearing at which he was present and represented by an attorney as well as having the opportunity to present evidence, this Court does not read *Gerstein* and *County of Riverside* to require more than a review by a neutral magistrate of the basis for arrest of an individual who has been detained without an arrest warrant for the purpose of determining that there was, indeed, probable cause for the arrest and subsequent detention.

■ Specifically, under the rule announced in *Gerstein,* one arrested without an arrest warrant is entitled to have a neutral magistrate determine whether "there is probable cause to detain the arrested person pending further proceedings." *Gerstein,* 420 U.S. at 120, 95 S.Ct. at 866. However, the arrested person is not entitled to the benefit of "the full panoply of adversary safeguards—counsel, confrontation, cross-examination, and compulsory process for witnesses." *Id.* at 119, 95 S.Ct. at 866. The probable cause determination required under *Gerstein* and *County of Riverside,* demands no more than an *ex post facto* validation of the probable cause for the arrest by a neutral magistrate without the full panoply of rights afforded a defendant at later adversarial stages of a criminal prosecution. In accordance with, *County of Riverside,* the arrested person is entitled to have such a determination rendered no later than 48 hours following arrest. *County of Riverside,* 500 U.S. at ——, 111 S.Ct. at 1670.

■ Here, plaintiff was arrested by defendant Dukas, on May 30, 1991, without an arrest warrant because of the exigent circumstances presented to him at the bank that night. That is, the two bank employees who had been present at the bank when an individual identifying himself as an employee of Pinkerton Security entered the bank by key, ostensibly for the purpose of conducting business for Pinkerton Security, positively identified Mr. Fiscus as that man, an apparent theft having taken place shortly before.

Following plaintiff's arrest, Dukas sought and was granted an arrest warrant from Judge Barner, on May 30th or 31st, but in any event within 48 hours of Mr. Fiscus's arrest. Plaintiff also had appeared before Judge Hilliard on May 30, 1991 at which time the Judge informed plaintiff of his rights and determined that probable cause existed to detain him. Irrespective of how this judicial proceeding is designated, it performed the essential function of assessing the underlying basis for detaining plaintiff, as well as informing plaintiff of his rights and setting bond for his release. The combining of criminal procedures was expressly authorized by the Supreme Court in *Gerstein* in recognizing the diversity of criminal procedures among the states as well as the demands of federalism.

Thus, the facts show that within 48 hours after plaintiff's arrest an arrest warrant was issued by Judge Barner and that plaintiff appeared before Judge Hilliard who also made an independent determination that probable cause existed to detain him. Judges Barner and Hilliard each, independently, determined that probable cause existed to detain Mr. Fiscus.

■ Although in *County of Riverside,* the Supreme Court alluded to a hearing in the context of a probable cause determination, 500 U.S. at ——, 111 S.Ct. at 1670, and that "persons arrested without a warrant must promptly be brought *before* a neutral magistrate," 500 U.S. at ——, 111 S.Ct. at 1668, this Court concludes that the arrested person need not be present when the judicial officer is determining whether probable cause to detain him exists following his arrest. It is the independent and neutral determination by a judicial officer of whether probable cause exists which is fundamental under the Fourth Amendment, *see Gerstein* and *County of Riverside,* and which must be made within 48 hours, not the presence of the defendant.

Cir.1989), is misplaced. Where an arrest warrant is issued on the basis of an affidavit which is deficient, the warrant is, of course, defective. In this case, however, there is no evidence of an affidavit. Rather, defendant Dukas apparently presented his evidence to Judge Barner verbally in conjunction with the incident report which the Judge also reviewed. Thus, the Court can draw no conclusion about the evidence considered by Judge Barner other than that his ruling is clearly consistent with the evidence in this case.

1564

In this case, plaintiff was brought before Judge Hilliard who determined that probable cause existed based upon the "fact sheet, the City of Roswell ticket form which was sworn to by Detective Dukas, the Incident Report prepared by Officer Paul Nadeau, the arrest/booking report and Mr. Fiscus's criminal history ... especially since there were two (2) eyewitnesses who positively identified Mr. Fiscus."

From the record before this Court, it appears that plaintiff is innocent of the charges for which he was originally arrested by Detective Dukas. And despite the review of two neutral judicial officers, plaintiff was detained for a crime which he, apparently, did not commit. The plaintiff's arrest seems to have arisen from the initial misidentification of plaintiff as the perpetrator of the underlying crime by two witnesses whose motives have not been impugned. This unfortunate result should not obscure that plaintiff was accorded all of the protections of a probable cause determination to which he was entitled under the Fourth Amendment. Consequently, such circumstances, while necessarily troubling, do not rise to the level of a federal constitutional violation, a predicate to establishing jurisdiction under 42 U.S.C. § 1983 which secures rights guaranteed by the federal Constitution or federal law.

■ Should it be determined that *County of Riverside*, decided on May 13, 1991, requires more than what the Court has determined above (such as a preliminary adversary hearing with counsel present all within 48 hours of the arrest), the law cannot be deemed to have been sufficiently clear and established that a reasonable police officer in defendant Dukas's place, arresting plaintiff on May 30, 1991, would have known that the procedure he followed did not conform to the constitutional demands of a Supreme Court case decided within the same month. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

Something clearly took place within the promptness requirement of *Gerstein*. The only question might be whether what took place was all that was required by *County of Riverside*. Such police officer would be entitled to qualified immunity. Accordingly, defendants' motion for summary judgment is GRANTED as to counts I, II, and IV.

*SUPPLEMENTAL JURISDICTION*

■ The district courts' exercise of ancillary and pendent jurisdiction, now referred to as supplemental jurisdiction, is discretionary. 28 U.S.C.A. § 1367(c) (West 1993). However, as the House Report of the Committee on the Judiciary makes clear,

"Subsection 114(c) [28 U.S.C. § 1367] codifies the factors that the Supreme Court has recognized as providing legitimate bases upon which a district court may decline jurisdiction over a supplemental claim, even though it is empowered to hear the claim. Subsection (c)(1)–(3) codifies the factors recognized as relevant under current law..... As under current law, subsection (c) requires the district court, in exercising its discretion, to undertake a case specific analysis."

H.R.Rep. No. 734, 101st Cong., 2d Sess. 29, *reprinted in* 1990 U.S.C.C.A.N. 6802, 6875. Such an analysis includes

"considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them. *Erie R. Co. v. Tompkins*, 304 U.S. 64 [58 S.Ct. 817, 82 L.Ed. 1188 (1938)]. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims *should* be dismissed as well."

*United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) (footnotes omitted) (emphasis added) (superseded by statute).

Since summary judgment has been granted as to the § 1983 claims over which this Court had original jurisdiction, the Court declines to exercise its supplemental jurisdiction because what remains are claims based solely upon Georgia law. 28 U.S.C.A. § 1367(c). Further, comity suggests that the better course is to present this matter in state court.

Moreover, since summary judgment has been granted on the federal claims before

trial it is neither unfair nor inconvenient to the parties to require plaintiff to pursue his claim in state court. *See Hardy v. Birmingham Bd. of Education,* 954 F.2d 1546, 1553 (11th Cir.1992). *See also* 28 U.S.C. § 1367(d) ("The period of limitations for any claim asserted under subsection (a), ... shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."). Finally, considerations of judicial economy militate against this Court's maintaining jurisdiction. Accordingly, the Court declines to retain jurisdiction in this case and count three of the complaint is DISMISSED without prejudice, in accordance with 28 U.S.C.A. § 1367(c).

In sum, plaintiff's motion for partial summary judgment is DENIED; defendants' motion for summary judgment is GRANTED as to counts I, II, and IV and DENIED as to count III which is DISMISSED on jurisdictional grounds; plaintiff's cross-motion for summary judgment is DENIED.

SO ORDERED.