**Howard EUBANKS, Sr.,**
**Plaintiff–Appellee,**

v.

**Joseph GERWEN, individually and as Chief of the Fort Lauderdale Police Department; Daniel Losey, individually and in his official capacity as an officer for the Fort Lauderdale Police Department; James Wigand, individually and as an officer for the Fort Lauderdale Police Department, Defendants–Appellants.**

**No. 93–4779.**

United States Court of Appeals,
Eleventh Circuit.

Dec. 22, 1994.

---

* The clerk of this court shall forward to this panel any orders the district court issues in this case.

**1158**

Robert H. Schwartz, Gunther & Whitaker, Fort Lauderdale, FL, for appellants.

Arthur Michael Garel, Garel & Jacobs, P.A., Coral Gables, FL, Louis Thaler, Deutsch & Blumberg, P.A., Miami, FL, for appellee.

Before TJOFLAT, Chief Judge, BLACK, Circuit Judge, and KAUFMAN *, Senior District Judge.

FRANK A. KAUFMAN, Senior District Judge:

On June 13, 1988 plaintiff Howard Eubanks, Sr. was arrested in Fort Lauderdale, Florida, by the local police for possession of cocaine. Eubanks was subsequently prosecuted in a Florida state court for possession of a controlled substance, and acquitted on January 10, 1989. On May 4, 1990, plaintiff filed suit in the United States District Court

---

* Honorable Frank A. Kaufman, Senior U.S. District Judge for the District of Maryland, sitting by designation.

for the Southern District of Florida, alleging two violations of 42 U.S.C. § 1983 in connection with his arrest and prosecution, and also stating a Florida state law claim for malicious prosecution. Named as defendants are Joseph Gerwens, Chief of the Fort Lauderdale Police Department, and Daniel Losey and James Wigand, detectives of that Department. Eubanks' arrest and subsequent prosecution stemmed from an investigation conducted by Losey[1], pursuant to a telephone call from Calvin Johnson. On October 13, 1987, Johnson had been arrested by the State of Florida for trafficking in controlled substances. However, on March 25, 1988 he had entered into a substantial assistance agreement with the prosecutor. Under the terms of that agreement, if Johnson arranged a narcotics transaction involving at least one kilogram of cocaine within sixty days, his sentence would be substantially reduced. Johnson obtained two continuances in connection with his sentencing hearing in order to give him time to comply with the agreement. Ultimately that hearing was set for June 14, 1988.

On June 13, 1988, one day before Johnson was to be sentenced, he placed a telephone call to Detective Losey. Johnson informed Losey that Eubanks was in possession of cocaine, specifically, that there was contraband in Eubanks' car which was parked in front of Eubanks' place of business (the "Freeze"). Johnson told Losey that Johnson knew this because he had overheard a conversation in which Eubanks stated that he had cocaine in his car. Johnson further informed Losey that he had punctured one of Eubanks' car tires in order temporarily to immobilize the vehicle.

Johnson had previously served as a reliable informant for the Fort Lauderdale Police in other drug investigations. Losey was aware that it was known "on the street" that Johnson and Eubanks were very close, and had previously been informed by Johnson that Eubanks was dealing drugs. Losey had also received information from other informants, police officers of the Fort Lauderdale Police Department, and officers of the Federal Bureau of Alcohol, Tobacco and Firearms that Eubanks was dealing in drugs and illegal weapons. Furthermore, Losey has appropriately stated within the record in this case that, in his mind, the fact that Johnson faced sentencing the next day was not of great significance, as Florida courts generally allow additional continuances to complete assistance agreements.

After Johnson's June 13, 1988 telephone call, Losey and other members of the Fort Lauderdale Organized Crime Division undertook surveillance in the area of the Freeze. The officers drove by Eubanks' car at regular intervals, and observed Eubanks and several other individuals near the car, repairing a rear tire. After completing the repair, Eubanks and one of the other individuals drove the car away from the Freeze, and stopped at a local bar and poolroom. Patrolmen went inside the poolroom to verify that Eubanks was present. Eubanks shortly exited the pool hall and drove away in his automobile. The patrolmen stopped Eubanks' car a few blocks away. Losey then arrived and Eubanks admitted that the automobile was his. After Losey informed Eubanks of the reason for the stop, Eubanks consented to a search of his automobile, during which search cocaine was found in the trunk. Eubanks was then arrested. Subsequent to the arrest, the officers obtained and executed a warrant to search Eubanks' home. That search did not produce any illegal drugs or paraphernalia.

Eubanks, who did not have a prior criminal record, claimed that he had been framed. He denied knowledge or ownership of the cocaine and asserted that it had been planted in his car. In that context, defendants arranged for Johnson to undergo a polygraph examination to test the veracity of the information which Johnson had given the officers concerning Eubanks. The polygraph examiner considered Johnson to be deceptive, but recommended that another test be administered because Johnson indicated that he felt fearful and threatened throughout the examination. Consequently, a second test was arranged. The examiner who conducted the

---

1. Gerwens and Ligand had supervisory authority over Losey, but are sued in this case for their own alleged individual violations of Eubanks' rights.

second examination believed Johnson to be truthful.

Subsequently, the State Attorney filed an information charging Eubanks with possession of narcotics. When he so did, the State Attorney had information regarding the mixed polygraph results, the fruitless search of Eubanks' home and Eubanks' lack of prior criminal record. On January 19, 1989 Eubanks was acquitted following a bench trial. The evidence adduced at that trial indicated that Johnson may have planted the cocaine in Eubanks' trunk. Subsequently, Eubanks instituted this federal civil case.

■ The district court properly entered summary judgment with regard to Eubanks' § 1983 claim of false arrest on the basis that defendants' actions were shielded by qualified immunity. This Circuit has prescribed a two-part analysis for the defense of qualified immunity. First, defendants must show that they were acting in the scope of their discretionary authority at the time of the alleged wrongdoings. If defendants meet that burden, then plaintiff must show that defendants violated clearly established law based upon objective standards. *Courson v. McMillian,* 939 F.2d 1479, 1487 (11th Cir.1991). In the posture of a motion for summary judgment, this second issue itself has two subparts: first, whether the applicable law was clearly established at the time of the governmental action; and second, whether a genuine issue of fact must be resolved to determine if the government official's conduct violated clearly established law. *Id.* at 1487–88. In this instance, the district court properly determined that defendants were acting within their discretionary authority, and that under clearly established applicable legal principles with regard to warrantless searches and seizures, Detective Losey's investigatory stop, and thus the subsequent arrest, was legal. In a case involving a warrantless search and seizure, the question of whether qualified immunity should be held to exist turns upon whether there was "arguable" probable cause, as opposed to probable cause in fact. *Von Stein v. Brescher,* 904 F.2d 572, 579 (11th Cir.1990). The standard for arguable probable cause is whether a reasonable officer in the same circumstances and possessing

the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well-established law. *Id.* As the district court detailed, Detective Losey had arguable probable cause under the circumstances, given that Johnson had been a reliable informant in the past and that the tip which he provided to Losey on the day in question contained specific information which tended to show the tip itself was reliable. As there is no genuine issue of material fact to be resolved in determining if the defendants' actions were objectively reasonable under the law, the district court correctly held that defendants were entitled to assert qualified immunity and correctly granted summary judgment as to Eubanks' § 1983 false arrest contentions.

The district court denied defendants' motion for summary judgment with regard to the federal malicious prosecution claim on the basis that, in light of all of the information known to defendants at the time the decision to prosecute was made, a reasonable person could have inferred that Johnson was lying or fabricating evidence and that therefore Eubanks' malicious prosecution contention could not be disposed of in a summary judgment context. Defendants within appeal is from that denial.

.

## I

■ Federal Civil Rule 56(c) provides that summary judgment "shall be rendered ... if ... there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." The evidence in the record reveals that none of the defendants had anything to do with the decision whether or not to prosecute Eubanks. Thus the defendants herein are not proper targets of such a claim. *See Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1557 (11th Cir.1993), *modified,* 14 F.3d 583 (1994); *Lindsey v. Storey,* 936 F.2d 554, 563 (11th Cir.1991); *see also Barts v. Joyner,* 865 F.2d 1187, 1195–96 (11th Cir.1989), *cert. denied,* 493 U.S. 831, 110 S.Ct. 101, 107 L.Ed.2d 65 (1989). In the within case, if the entire sequence of events, including those relevant to the arrest, is examined, it becomes clear that none of the defendants were responsible

for the decision to prosecute, and that none of them improperly influenced the decision to prosecute. They did fully apprise the State Attorney of all relevant information known to them, including that which weighed for and against Eubanks' guilt. In so doing, the defendants concluded what they started to do in this case, i.e. they performed their duties as police officers, by acting on a seemingly reliable tip from a previously reliable informant in making an investigatory stop of a suspect, by then arresting that suspect upon the discovery of cocaine in the automobile, conducting a subsequent continued investigation, and turning over all relevant information about the matter to the State Attorney. But they did not make the decision as to whether or not to prosecute Eubanks; nor did they act in such a way as improperly to influence the decision by the State Attorney in that regard. Thus, pursuant to the principles set forth in *Post,* they are entitled to summary judgment in connection with the malicious prosecution claim of Eubanks pursuant to § 1983, which was denied to them by the court below, 771 F.Supp. 1216.[2]

## II

█ The dismissal by the court below of plaintiff's federal claim for false arrest is not on appeal before us. However, we note our agreement in that regard. In that light and since we are hereby ordering the dismissal of plaintiff's federal claim for malicious prosecution, the question arises as to whether we should order the district court to dismiss, without prejudice, plaintiff's state law claim for malicious prosecution. Under the Judicial Improvements Act of 1990, 28 U.S.C.A. § 1367(c), the district courts' exercise of ancillary and pendent jurisdiction, now referred to as supplemental jurisdiction, is discretionary.[3] As the House Report of the Committee on the Judiciary makes clear,

> (s)ubsection 114(c) (28 U.S.C. § 1367) codifies the factors that the Supreme Court has recognized as providing legitimate bases upon which a district court may decline jurisdiction over a supplemental claim, even though it is empowered to hear the claim. Subsection (c)(1)–(3) codifies the factors recognized as relevant under current law.... As under current law, subsection (c) requires the district court, in exercising its discretion, to undertake a case-specific analysis.

H.R.Rep. No. 734, 101st Cong., 2d Sess. 29, reprinted in 1990 U.S.C.C.A.N. 6802, 6875.

Such an analysis necessarily encompasses the declaration of the Supreme Court in *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) with regard to pendent jurisdiction that:

> (n)eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. *Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.*

*Id.* (footnote omitted) (emphasis added). In *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988), while noting that *Gibbs* did not establish a "mandatory rule to be applied inflexibly in all cases," *id.* at 350 n. 7, 108 S.Ct. at 619 n. 7, the Supreme Court reiterated that "when the federal-law claims have dropped out of the lawsuit in its early stages and only

---

**2.** Under those circumstances this Court need not determine whether defendants are also entitled to that determination on the basis of qualified immunity, *see Post,* at 1557, or because a malicious prosecution claim may perhaps not be stated under § 1983. *See Albright v. Oliver,* — U.S. ——, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Strength v. Hubert,* 854 F.2d 421, 426 and n. 5 (11th Cir.1988).

**3.** § 1367(c) provides that:

The district courts may decline to exercise supplemental jurisdiction over claims under subsection (a) if—
(1) the claim raises a novel or complex issue of State law
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it had original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Id.* at 350, 108 S.Ct. at 619 (footnote omitted). Here, the federal claims have been disposed of rather early on at the summary judgment phase. Thus comity suggests that the remaining state law malicious prosecution claim should be heard in state court if plaintiff desires to press it, unless limitations have run and therefore may perhaps bar the same. Accordingly, on remand, the district court should carefully consider whether to dismiss, without prejudice, that state law claim. At this stage it would not appear either unfair or inconvenient to the parties to require plaintiff to pursue the same in state court if that opportunity is available to plaintiff. *See Hardy v. Birmingham Bd. Of Education,* 954 F.2d 1546, 1553 (11th Cir.1992); *Fiscus v. City of Roswell,* 832 F.Supp. 1558, 1564 (N.D.Ga.1993).

### III

The within case is hereby REMANDED to the district court for dismissal, with prejudice, of plaintiff's federal claims under 42 U.S.C. § 1983, and for further consideration concerning Eubanks' state law malicious prosecution claim.