**Francis WOODS and Maggie Woods, his wife, Plaintiffs,**

v.

**Mark PARADIS, individually and in his capacity as police officer with the City of Miramar, and City of Miramar, Defendants.**

No. 03–61280–CIV–SEITZ.

United States District Court, S.D. Florida.

Feb. 22, 2005.

Douglas Lawrence Bates, Koppel & Bates, Plantation, FL, for Plaintiffs.

Christopher Frix Kurtz, Douglas Ralph Gonzales, Jennifer Alece Goldberg, Weiss Serota Helfman Pastoriza et al., Fort Lauderdale, FL, for Defendants.

*ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT*

SEITZ, District Judge.

THIS MATTER is before the Court on the cross Motions for Summary Judgment filed by Plaintiffs Francis Woods ("F.Woods") and Maggie Woods ("M.Woods") [DE–54] and Defendants Mark Paradis ("Defendant Paradis") and City of Miramar [DE–46]. Plaintiffs assert claims of false arrest, malicious prosecution, First Amendment retaliation, and loss of consortium against Defendants in connection with F. Woods' arrest in May 2001. In their Motion for Summary Judgment, Plaintiffs contend that F. Woods' arrest was unsupported by probable cause and therefore violated his constitutional rights. In turn, Defendants seek summary judgment on the grounds that the arrest was supported by arguable, if not actual, probable cause, and that Defendant Paradis is qualifiedly immune from suit under 42 U.S.C. § 1983. Upon careful review of the cross-motions for summary judgment, the responses and replies thereto, the depositions and affidavits, and the relevant portions of the record, the Court finds that Defendant is entitled to summary judgment as to all claims asserted in Plaintiffs' First Amended Complaint.

## I. FACTUAL BACKGROUND

Plaintiffs' claims are premised on the arrest of F. Woods in the early morning of May 13, 2001. On May 12, 2001, F. Woods, a Broward County Sheriff's Office ("BSO") corrections deputy, was scheduled to work from 11:00 p.m. until 7:00 a.m. the following morning. Deposition of F. Woods, [DE–50] at 18. At approximately 6:00 p.m. on May 12, 2001, F. Woods went to a wedding reception. *Id.* at 19. While at the wedding reception, between 8:30 p.m. and 8:45 p.m., F. Woods notified his employer that he was too ill to go to work. *Id.* at 18, 21. F. Woods left the wedding for his home at 9:00 p.m. *Id.* at 25. At about midnight, F. Woods received a telephone call from his wife, M. Woods, who requested that he pick up their children from the babysitter. *Id.* at 26. F. Woods got into his car to pick up his kids at approximately 1:00 a.m. *Id.* at 27. F. Woods was in a rush to pick up his children because he had told his employer that he was ill, and he knew that he "wasn't supposed to be out there." Pl.'s Statement, May 18, 2001, [DE–48] at Ex. A, p. 8.

Defendant Paradis, a police officer with the City of Miramar since October 1997, has been assigned to road patrol since he started working for the City seven years ago. Affidavit of Mark Paradis, [DE–53] at ¶¶ 2–3. As of the date of the subject incident, Defendant Paradis had nearly three years of extensive experience in estimating the speed of vehicles. *Id.* at ¶ 3. Although Defendant Paradis did not have a radar gun to detect F. Woods' speed, he has received extensive training and certification in visually estimating the speed of a moving vehicle while confirming his visual estimation with the use of a radar gun. ¶ 4. In order to be certified to use a radar gun, Defendant Paradis had to visually estimate the speed, within 5 miles per hour of a radar gun, of approximately 100 vehicles, including vehicles that sped by him when he was in a stopped position. *Id.* at ¶ 5.

On May 12, 2001, Defendant Paradis was working the evening shift from 10:00 p.m. to 8:00 a.m. the following morning. At approximately 1:00 a.m. on May 13, 2001, Defendant Paradis approached a blinking red light at the intersection of Fairmont Avenue and Miramar Parkway going southbound, in a residential area. *Id.* at ¶¶ 6–8. As Defendant Paradis was stopped (facing south) at the blinking red light, he saw F. Woods' car speeding excessively in a 40 mile per hour zone, eastbound on Miramar Parkway and approaching Douglas Road. *Id.* at ¶ 7. In Defendant Paradis' estimation, F. Woods was driving approximately 80–85 miles per hour at the time that he passed in front of Defendant Paradis at the intersection. *Id.* at ¶ 7. Defendant Paradis was approximately 30–40 feet away from F. Woods' vehicle when F. Woods went through the intersection of Fairmont Avenue and Miramar Parkway. *Id.* Although F. Woods disputes that he was going 80–85 miles per hour, F. Woods has acknowledged that he may have been speeding and states that he does not know what the speed limit was or how fast he was driving. *See* DE–48, Ex. A, at 8; Pl.'s Dep. at 29–31.

Just after F. Woods passed by Defendant Paradis at the intersection of Miramar Parkway and Fairmont Avenue, Defendant Paradis began his attempt to catch up to F. Woods. Paradis Aff. at ¶ 9. As Defendant Paradis was behind F. Woods on Miramar Parkway, Defendant Paradis states that he observed F. Woods speed through a construction area and run a red light at the intersection of Miramar Parkway and Douglas Road. *Id.* at ¶ 11. Although Plaintiff does not dispute that he sped through a construction area,[1] he does contest Defendant Paradis' statement that he ran a red light, stating that the light, when he proceeded through the intersection, "had just turned amber, yellow." Pl.'s Dep. at 32. As Defendant Paradis approached Douglas Road, he turned on his overhead lights in at attempt to pull F. Woods over. Paradis Aff. at ¶ 12. Defendant Paradis had to drive at an excessively high rate of speed just to catch up with F. Woods. While attempting to catch up with F. Woods' vehicle, Defendant Paradis did not look at his speedometer because he was focused on catching up with F. Woods.[2] *Id.* at ¶ 13.

Although F. Woods noticed Defendant Paradis driving behind him with his lights turned on, F. Woods admits that he did not immediately pull over as soon as he saw the lights on. Pl.'s Dep. at 85–86. F.

---

1. Plaintiff states that Defendant Paradis did not previously mention that F. Woods was traveling through a construction zone. He does not, however, dispute that fact.

2. Plaintiff submitted the affidavit of Donald J. Felicella, a purported expert witness in the field of accident reconstruction, in support of his Motion for Summary Judgment. *See* DE–55 at Ex. 8. Plaintiff states that Felicella's affidavit demonstrates that Defendant Paradis' account of the incident is "fundamentally and undeniably impossible according to the laws of physics." Pls.' Mot. for Summ. J., at 5. This is so, Plaintiff states, because Paradis would never have been able to catch up to F. Woods if Paradis was traveling at 70 miles per hour, as Paradis has testified, and F.

Woods was traveling at a constant rate of 80–85 miles per hour. However, as Defendants point out in their opposition, Felicella's report is "based on the incorrect assumption that Officer Paradis maintained a constant speed of 70 miles per hour, and that Woods maintained a constant speed of 80–85 miles per hour during the pursuit." Defs.' Opp'n, at 7. Officer Paradis has never testified that those speeds were constant throughout the pursuit Instead, Officer Paradis specifically testified that he was unsure of how fast he or F. Woods were driving while he was pursuing F. Woods, as opposed to his initial observation of F. Woods' speed while Officer Paradis was stopped at the intersection of Miramar Parkway and Fairmont Avenue.

Woods states that he did not immediately pull over because the police vehicle was still "quite a distance" behind him and F. Woods had not yet realized that he was being pulled over. *Id.* at 33–34. In his testimony, Defendant Paradis acknowledged that the slight delay in F. Woods pulling over was because he was not aware that he was being pulled over, and he testified that he did not believe that F. Woods was trying to flee or elude him. Deposition of Mark Paradis, DE–55, Ex. 6 at 62–63; Paradis Statement, May 16, 2001, DE–55, Ex. 3 at 4. F. Woods pulled over at Newport Road and Miramar Parkway, approximately four blocks away from where the incident began. Paradis Aff., at ¶ 14. Defendant Paradis then stopped his car behind F. Woods' vehicle, approached the vehicle, and asked F. Woods why he was driving in that manner. *Id.* at ¶ 15. According to F. Woods, Defendant Paradis asked him "What the fuck is your problem?" Pl.'s Dep. at 36. F. Woods also testified that Defendant Paradis asked him if he knew the speed limit and if he was aware of how fast he was going, to which F. Woods responded that he did not. *Id.* at 36–37, 39–40. Defendant Paradis also recalls that F. Woods told him that he was trying to make the light, and that F. Woods, when he was stopped by Defendant Paradis, smiled at him "as if he thought the entire situation was a joke." Paradis Aff. at ¶¶ 15–16. Based on his responses and his demeanor, it was Defendant Paradis' opinion that F. Woods had no appreciation for the seriousness of his actions of running a red light and driving at an excessive rate of speed. *Id.* Defendant Paradis then asked F. Woods to get out of his car, placed him in handcuffs, and put him in the back of his police vehicle. *Id.* at ¶ 17.

F. Woods never asked Defendant Paradis any questions before he was handcuffed. DE–48, Ex. A at 11; Pl.'s Dep. at 36–37; Paradis Aff. at ¶ 18. Subsequent to F. Woods being handcuffed, one of the backup officers responding to the scene, Officer Misa Inks, conducted the inventory of F. Woods' car because it was being impounded. Paradis Aff. at ¶ 19. F. Woods also contends that two other officers assisted in searching his car. Pl.'s Dep. at 42–43. Afterwards, Defendant Paradis drove Woods to the Hollywood Jail in order to book him for reckless driving. Paradis Aff. at ¶ 20. When Defendant Paradis and F. Woods arrived at the Hollywood Jail, Defendant Paradis was advised that F. Woods could not be processed at the Hollywood Jail because he was a BSO employee; instead, F. Woods had to be processed at the main jail, the place of F. Woods' employment. *Id.* at ¶ 21. Defendant Paradis gave F. Woods a Notice to Appear ("NTA") and released him. *Id.* at ¶ 22; Pl.'s Dep. at 58. F. Woods then thanked Defendant Paradis for letting him go. *Id.* at ¶ 22; DE–48, Ex. A at 20. At no time during the night of the subject incident was F. Woods booked at the police station, placed in a holding cell, fingerprinted, or placed in any jail or prison facility overnight. Paradis Aff. at ¶ 23; Pl.'s Dep. at 56–57. No force was ever used against F. Woods during the arrest, and F. Woods admitted that Defendant Paradis did not cause him any physical harm. Paradis Aff. at ¶ 23; Pl.'s Dep. at 60–61.

As far as Defendant Paradis was concerned, after he released F. Woods with the NTA, he had completed his duties as an officer with respect to the subject incident, and he turned in his copy of the NTA, the probable cause affidavit, and the incident report to the Miramar Police Department. Paradis Aff. at ¶ 24. With the exception of providing a sworn statement to Sergeant Rabaglia of the BSO's Professional Compliance Division on May 16,

2001, Defendant Paradis did not speak to anyone else about the arrest of F. Woods until he was subpoenaed to testify at F. Woods' criminal trial. *Id.* Defendant Paradis played absolutely no role in the decision to prosecute F. Woods. *Id.* at ¶ 25. In fact, Defendant Paradis did not meet or speak with anyone from the State Attorney's Office until he met with Sean Youngward, the assistant state attorney who prosecuted F. Woods' criminal case, on the day that the case was prosecuted. *Id.* at ¶ 26. The case was tried before Judge Sharon Zeller in Broward County Criminal Court. *See* Hearing Tr., DE–55, Ex. 4. At the conclusion of the State's case, Judge Zeller entered a directed verdict. *Id.* at 24.

 F. Woods did not seek any medical or psychological treatment as a result of his arrest except for a mandatory meeting with the BSO psychiatrist. Pl.'s Dep. at 61–62. F. Woods can still do all of the same things that he did prior to his arrest.[3] *Id.* at ¶ 63. F. Woods is still employed by the BSO, and this incident has not affected his career in any way.[4] *Id.* at ¶ 67. Even M. Woods, F. Woods' wife, does not believe that F. Woods has incurred any harm. Deposition of M. Woods, DE–51 at 16–19. As far as M. Woods can tell, F. Woods was not and has not been affected by his arrest. *Id.* at 16. Their relationship has not been affected by

the arrest, and the arrest has not caused them to seek marriage counseling. *Id.* at 16, 18. In fact, M. Woods testified that she and F. Woods continue to do the same things that they did before the arrest and share the same love and emotional support as they did prior to the arrest. *Id.* at 16.

## II. PROCEDURAL HISTORY

In June 2003, Plaintiffs commenced this action by filing a six-count Complaint in state court alleging four counts against Defendant Paradis—false arrest (Count I), malicious prosecution (Count II), violations of 42 U.S.C. § 1983 (Count III), and First Amendment retaliation (Count IV)—one count against Defendant City of Miramar for alleged violation of Fla. Stat. § 768.28 (Count V), and a loss of consortium claim brought by Plaintiff Maggie Woods against both Defendants (Count VI). Defendants removed the case to this Court on July 2, 2003. On March 29, 2004, this Court granted in part, denied in part Defendants' motion to dismiss Plaintiffs' Complaint. Specifically, the Court dismissed with prejudice the portion of Count III that alleged that Defendant Paradis provided perjured testimony in his arrest report, probable cause affidavit, and deposition testimony, as well as the claim under Fla. Stat. § 768.28 in Count V. The Court also dismissed without prejudice other portions of Count III, requiring Plaintiffs to amend those claims.

---

3. In his opposition to Defendants' Statement of Facts, Plaintiff F. Woods attempts to dispute his prior deposition testimony that he is "able to do the same things today that [he was] able to do prior to th[e] incident." Specifically, Plaintiff F. Woods states that he disagrees with that statement, as he "will never again be able to truthfully say he has never been arrested, placed under internal investigation, or put on administrative leave at work." DE–63 at ¶ 40.

4. Although F. Woods previously admitted that his career had not been affected in any way

by the incident, he now states that while he is still employed with the BSO, "there is a permanent incident that he must answer to in his file and there is no way that Defendant can assert that this will not affect his career now or at some later point." DE–63 at ¶ 41. Plaintiff cannot attempt to create a factual issue by making an argument that conflicts with his sworn deposition testimony. Further, Plaintiff cannot demonstrate that he suffered an injury by speculating that the arrest may affect him in the future.

Plaintiffs filed a First Amended Complaint on April 14, 2004. In the First Amended Complaint, Plaintiffs again asserts a claim of false arrest under state law (Count I), malicious prosecution under state law (Count II), violations of 42 U.S.C. § 1983 (Count III), and First Amendment retaliation (Count IV) against Defendant Paradis, as well as a state tort false arrest claim against the City of Miramar (Count V) and a loss of consortium claim brought by M. Woods against both Defendants (Count VI). In essence, the First Amended Complaint alleges that: (1) Defendant Paradis and the City of Miramar illegally detained and arrested F. Woods without probable cause; (2) Defendant Paradis maliciously instituted the prosecution against F. Woods; (3) Defendant Paradis violated F. Woods' clearly established and well-settled federal constitutional right to be free from unreasonable seizures of his person and from malicious prosecution; (4) Defendant Paradis retaliated against F. Woods for exercising his First Amendment rights; and (5) M. Woods has lost the consortium, society, companionship, affection and support of her husband as a result of Defendants' acts.[5] Plaintiffs and Defendants each seek summary judgment as to all counts in the First Amended Complaint.

## III. DEFENDANTS' MOTION TO STRIKE THE AFFIDAVIT OF LEWIS FISHMAN

■ Before addressing the merits of the parties' motions for summary judgment, the Court must address an issue regarding the admissibility of the affidavit of Lewis Fishman, which Plaintiffs submitted in support of their motion. In his affidavit, Mr. Fishman, a criminal defense lawyer who represented F. Woods in the criminal proceedings stemming from his reckless driving arrest, makes the following statement: "After reviewing the case with Mr. Woods, and after reviewing the incident report and the probable cause affidavit, it was clear to me, as an experienced and seasoned criminal defense lawyer, that the reason for Mr. Woods' arrest was due to the fact that he was DWB (Driving While Black). In other words, it was my professional opinion that Mr. Woods was driving in the City of Miramar at 1:00 o'clock a.m. in the morning, in a nice vehicle and neatly dressed, and Officer Paradis targeted him as a criminal." DE–55, Ex. 15 at 2. Defendants ask the Court to strike Mr. Fishman's affidavit as speculative, conclusory, and inappropriate for consideration on summary judgment.

■ Fed.R.Civ.P. 56(e) provides that affidavits supporting and opposing motions for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." An affidavit has no probative value and must be stricken when it contains conclusions rather than statements of fact. *See Benton–Volvo–Metair-*

---

**5.** Following Plaintiffs' filing of the First Amended Complaint, Defendants answered Counts I, II, IV, and VI, but again moved to dismiss Counts III and V. The primary basis for Defendants' motion to dismiss Count III was their contention that Defendant Paradis was entitled to qualified immunity from suit as to the § 1983 claims. Because the allegations of the complaint, if taken as true, were sufficient to establish that constitutional viola-tions may have occurred, the Court ruled that the issue of qualified immunity had to be resolved on summary judgment, and not on a motion to dismiss, Similarly, the Court denied the motion to dismiss Count V because Defendants had misconstrued the nature of Plaintiffs' claim, which is a state tort false arrest claim against the City of Miramar, as being one arising under Fla. Stat. § 768.28.

*ie, Inc. v. Volvo Southwest, Inc.,* 479 F.2d 135, 139 (5th Cir.1973); *see also Johnson v. Scotty's, Inc.,* 119 F.Supp.2d 1276, 1281 (M.D.Fla.2000) ("[a]n affidavit must be stricken if it is a conclusory argument rather than a statement of fact, or when the affidavit is not based on personal knowledge."). Here, although the Fishman affidavit purports to be based on Mr. Fishman's review of the record and his vast experience as a criminal defense lawyer, no specific facts are provided to support either statement. Instead, the affidavit is based on pure speculation and is made without any personal knowledge of the facts underlying the case or any factual support. Therefore, the Court will grant Defendants' motion to strike the affidavit, and the Fishman affidavit will not be considered in connection with the summary judgment motions.

## IV. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citing Fed.R.Civ.P. 56(c)). The moving party bears the initial responsibility of showing the Court, by reference to the record, that there are no genuine issues of material fact to be decided at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once that initial burden is met, the non-moving party must go beyond the pleadings and "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)); *see also Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. In so doing, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct. 1348. Indeed, a mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *see also Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990).

When deciding whether summary judgment is appropriate, the Court must view the evidence and all reasonable factual inferences therefrom in the light most favorable to the non-moving party. *Witter v. Delta Air Lines, Inc.,* 138 F.3d 1366, 1369 (11th Cir.1998) (citations omitted). The Court must then decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir.1997) (quoting *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505). With these principles in mind, the Court turns to the parties' arguments in their respective motions for summary judgment.

### B. False Arrest Claim Under § 1983

Plaintiff F. Woods contends that he is entitled to summary judgment on his § 1983 false arrest claim because Defendant Paradis arrested him without probable cause or arguable probable cause, in violation of his rights under the Fourth Amendment to the United States Constitution. Defendant Paradis, in turn, argues that he is entitled to qualified immunity on the false arrest claim. In summary, the resolution of both motions for summary judgment on F. Woods' § 1983 claim re-

quires a determination as to whether F. Woods' arrest on May 13, 2001, was supported by probable cause or arguable probable cause such that Defendant Paradis is qualifiedly immune from suit.

 Qualified immunity "offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson,* 311 F.3d 1340, 1346 (11th Cir.2002) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir.2002) (internal quotation marks and citations omitted). Qualified immunity, therefore, "represents a balance between the need for a remedy to protect citizens' rights and the need for government officials to perform their duties without the fear of constant, baseless litigation." *Kingsland v. City of Miami,* 382 F.3d 1220, 1232 (11th Cir.2004) (quoting *GJR Inv., Inc. v. County of Escambia,* 132 F.3d 1359, 1366 (11th Cir.1998)).

 The essence of qualified immunity analysis is the public official's objective reasonableness, regardless of his underlying intent or motivation. *Id.* (citing *Harlow,* 457 U.S. at 819, 102 S.Ct. 2727; *Lee,* 284 F.3d at 1195). To receive the benefit of qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Id.* (internal quotation marks omitted). If the defendant was not acting within the scope of his discretionary au-

thority, he is ineligible for the benefit of qualified immunity. *Id.* If, however, the defendant does meet the initial burden of establishing that he was acting within the scope of his discretionary authority, then the burden shifts to the plaintiff to show that qualified immunity is inappropriate. *Id.*

 The Supreme Court recently set forth a two-part test for evaluating a claim of qualified immunity. *See Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). First, the Court must ask: "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201, 121 S.Ct. 2151. If a constitutional right would have been violated under the plaintiff's version of the facts, then the Court must determine whether the right was clearly established. *Id.* The plaintiff must show that the defendant violated clearly established law based upon objective standards. *Eubanks v. Gerwen.* 40 F.3d 1157, 1160 (11th Cir.1994). For qualified immunity to be denied, "pre-existing law must dictate, that is, truly compel ... the conclusion for every like-situated, reasonable government agent that what the defendant is doing so violates federal law in the circumstances." *McMillian v. Johnson,* 88 F.3d 1554, 1562, *amended on other grounds,* 101 F.3d 1363 (11th Cir.1996), *cert. denied,* 521 U.S. 1121, 117 S.Ct. 2514, 138 L.Ed.2d 1016 (1997).

### 1. *Scope of Discretionary Authority*

 As an initial matter, the Court finds that Defendant Paradis was acting within the scope of his discretionary authority when he arrested Plaintiff F. Woods. A government official proves that he acted within the scope of his discretionary authority by showing "objective circumstances which would compel the conclusion that his actions were undertaken

pursuant to the performance of his duties and within the scope of his authority." *Rich v. Dollar,* 841 F.2d 1558, 1564 (11th Cir.1988) (citing *Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). For qualified immunity purposes, this standard has been interpreted at a high level of generality. *See Griswold v. Alabama Dept. of Industrial Relations,* 903 F.Supp. 1492, 1498 (M.D.Ala.1995). For example, in *Rich,* while the Plaintiff alleged that the investigator submitted a probable cause affidavit without reasonable basis, the Eleventh Circuit determined that the defendant had met the threshold requirement of showing that he acted within the scope of his discretionary authority. *Rich,* 841 F.2d at 1564. This conclusion was based on the fact that defendant's "actions in conducting the investigation and writing and submitting the probable cause affidavit at issue were carried out in the performance of his normal job duties and were within the authority delegated to him by his employer." *Id.* Therefore, while Plaintiff F. Woods contends that Defendant Paradis arrested him without probable cause, that plays no role in the assessment of whether Defendant Paradis was acting within the scope of his discretionary duties. Because patrolling the streets and apprehending those suspected of violating the law were within the scope of Defendant Paradis' duties, he has met his initial burden under the qualified immunity standard. *See Lee,* 284 F.3d at 1194.

### 2. *Violation of Clearly Established Rights*

■ Because the Court has concluded that Defendant Paradis was acting within the scope of his discretionary authority, the analysis shifts to whether the alleged facts show that Defendant Paradis' conduct violated a constitutional right. *See Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. F. Woods asserts that Defendant Paradis violated the Fourth Amendment by arresting him without either actual or arguable probable cause. Although Defendants agree that an arrest without actual or arguable probable cause would violate the Fourth Amendment, *see Atwater v. City of Lago Vista,* 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001), Defendants contend that there was probable cause to arrest.

■ Under Eleventh Circuit precedent, an arrest does not violate the Fourth Amendment if a police officer has probable cause for the arrest. *See e.g., Lee,* 284 F.3d at 1194–95; *see also Lund,* 1999 WL 1457331, at \*4 ("Probable cause constitutes an absolute bar to a 42 U.S.C. § 1983 action for improper arrest") (citing *Ortega v. Christian,* 85 F.3d 1521, 1525 (11th Cir. 1996)). "For probable cause to exist, both federal and Florida law say that an arrest must be objectively reasonable based on the totality of the circumstances." *Id.* at 1195. This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense. *Rankin v. Evans,* 133 F.3d 1425, 1435 (11th Cir.1998) (internal quotation marks omitted); *Von Stein,* 904 F.2d at 578; *United States v. Jimenez,* 780 F.2d 975, 978 (11th Cir.1986).[6]

---

**6.** Although probable cause requires more than suspicion, it does not require convincing proof, and need not reach the standard of conclusiveness and probability needed to support a conviction. *Lee,* 284 F.3d at 1195.

Furthermore, the fact that the individual is acquitted in a criminal case stemming from his arrest has no significance in determining whether the arrest itself was supported by probable cause. *See Lund v. Rakofsky,* No.

 Even if there is no actual probable cause, an arresting officer is entitled to qualified immunity if the arrest is supported by arguable probable cause. *Lee,* 284 F.3d at 1195; *Scarbrough v. Myles,* 245 F.3d 1299, 1302 (11th Cir.2001); *Redd v. City of Enterprise,* 140 F.3d 1378, 1382–83 (11th Cir.1998); *Gold v. City of Miami,* 121 F.3d 1442, 1445 (11th Cir.1997). Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the arresting officer could have believed that probable cause existed to arrest. *See Wood v. Kesler,* 323 F.3d 872, 878 (11th Cir.2003); *see also Lee,* 284 F.3d at 1195 (internal quotations omitted). Arguable probable cause requires the application of an objective standard, with the court "asking whether the officer's actions are objectively reasonable ... regardless of the officer's underlying intent or motivation." *Lee,* 284 F.3d at 1195 (citation and internal quotation marks omitted). "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Kesler,* 323 F.3d at 878. To have arguable probable cause for an arrest, an officer does not need to "prove every element of a crime or [ ] obtain a confession before making an arrest ...." *Lee,* 284 F.3d at 1195 (citation omitted). This "would negate the concept of probable cause and transform arresting officers into prosecutors." *Id.* (citing *Scarbrough,* 245 F.3d at 1302–03).

In this case, Defendant Paradis states that the arrest was supported by the fact that F. Woods: (1) was driving approximately 80–85 miles per hour in a 40–45 mile per hour zone; (2) was speeding through a residential and construction area; (3) ran a red light; and (4) failed to immediately pull over once Officer Paradis activated his overheard lights behind F.

Woods' vehicle. As an initial matter, the Court does not find the failure to immediately pull over to support a finding of probable cause (or arguable probable cause) to arrest, because Defendant Paradis' own testimony confirms that he believed that F. Woods had not noticed that he was being pulled over, and he did not believe that F. Woods was fleeing or evading the police. Next, there is a disputed question of fact as to whether F. Woods ran a red light; although Defendant Paradis states that he did, F. Woods asserts that the light was yellow when he entered the intersection. However, the dispute as to the color of the light is not determinative, as the Court finds ample support, based on the undisputed fact that Plaintiff was driving at an excessive rate of speed through a residential and construction area, for a finding of probable cause.

 Section 316.192(1), Fla. Stat. (2004), provides that:

> Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property is guilty of reckless driving.

Defendant Paradis estimated, based on his extensive training and experience in visually estimating the speed of moving vehicles, that F. Woods was traveling at approximately 80–85 miles per hour. Although F. Woods disputes that estimate, he does not dispute that he was traveling over the speed limit, which he believed to be 40–45 miles per hour. The undisputed evidence also indicates that the incident took place in a residential area, and in a construction zone. Although F. Woods states that he does not recall the rate of speed at which he was traveling, such an inability to recall cannot controvert the officer's undisputed characterization of the events. *See Lund,* 1999 WL 1457331, at *4 (finding that

98–7332–CIV, 1999 WL 1457331, at *6 (S.D.Fla. Dec.30, 1999).

where officer reported that plaintiff ran a red light, and the only evidence before the Court was that the Plaintiff could not recall running the red light the facts were sufficient to support a finding of actual probable cause to arrest). Further, F. Woods does not dispute Defendant Paradis' characterization of his demeanor after being pulled over, which led Defendant Paradis to believe that F. Woods did not appreciate the seriousness of his actions. Given the facts and circumstances within Defendant Paradis' knowledge, based on his personal observation of F. Woods' speeding and demeanor, there was ample basis for a prudent person to believe that F. Woods was driving with reckless disregard for the safety of others. *Rankin,* 133 F.3d at 1435; *Von Stein,* 904 F.2d at 578. The Court therefore concludes that F. Woods' arrest was supported by probable cause.[7]

Because Defendant Paradis had probable cause to arrest F. Woods for reckless driving, Plaintiff F. Woods cannot demonstrate that his arrest violated the Fourth Amendment. Further, because Plaintiff F. Woods has not produced any evidence to support the conclusion that "no reasonable officer could have believed that probable cause existed," Defendant Paradis enjoys qualified immunity as to the § 1983 false arrest claim. *See Lund,* 1999 WL 1457331, at *4 (citing *Gold,* 121 F.3d at 1445; *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). Accordingly, Defendants are entitled to summary judgment on this claim.

### C. Malicious Prosecution Claim Under § 1983

■■■ Next, Plaintiff F. Woods asserts that Defendant Paradis violated his right to be free from unlawful and malicious prosecution. In support of this claim, F. Woods states that he was arrested without probable cause; Defendant Paradis filed a perjured affidavit supporting his arrest; Defendant Paradis maintained the prosecution against F. Woods despite his knowledge that he did not have probable cause to arrest; the criminal charges maintained against F. Woods were ultimately dismissed; and F. Woods was damaged by spending four hours in custody and being investigated by his own agency with the threat of job less. *See* Pls.' Mot. for Summ. J., DE–54 at 17. Defendants dispute each of these assertions, and contend that F. Woods cannot meet the requisite elements for establishing a claim of malicious prosecution. Upon review of the undisputed facts, the Court agrees with Defendants.

■■■ To establish a malicious prosecution claim under § 1983, Plaintiffs must prove (1) the elements of the common law tort claim and (2) a violation of F. Woods' Fourth Amendment right to be free from the unreasonable seizure of his person. *Kesler,* 323 F.3d at 991. The existence of probable cause prevents F. Woods from proving either. *See id.,* at 882. The elements of a common law state tort claim for malicious prosecution are that: (1) an original criminal proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of that proceeding in favor of the plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the defendant; and (6) the plaintiff suffered damage as a result of the original proceeding. *See Lund,* 1999 WL 1457331, at *2

---

7. At the very least, reasonable officers in the same circumstances and possessing the same knowledge as Defendant Paradis could have believed that probable cause existed to arrest. *See Wood,* 323 F.3d at 878.

(citing *Burns v. GCC Beverages, Inc.*, 502 So.2d 1217, 1218 (Fla.1986)); *Rowen v. Holiday Pines Property Owners' Association*, 759 So.2d 13, 15 (Fla. 4th DCA 2000). It is undisputed that F. Woods faced criminal charges in connection with his arrest for reckless driving, and that the judge in the criminal proceedings granted a judgment of acquittal in favor of F. Woods. However, because F. Woods cannot establish the second, fourth, and fifth elements of this test, Defendants are entitled to summary judgment on F. Woods' malicious prosecution claim.

■■■ First, Defendant Paradis was not the legal cause of the original proceedings against F. Woods. Defendant Paradis simply fulfilled his duties as a police officer, and turned in his copy of the Notice to Appear, the probable cause affidavit, and the incident report to the Miramar Police Department. It is undisputed that Defendant Paradis never spoke to anyone or heard anything more about F. Woods' case until he was subpoenaed to testify at F. Woods' criminal trial. In fact, Defendant Paradis did not meet or speak with anyone from the State Attorney's Office until he met with Assistant State Attorney Sean Youngward on the day the case was prosecuted. Because Defendant Paradis had nothing to do with the decision to prosecute F. Woods, he is not the proper target for a malicious prosecution claim. *See Eubanks v. Gerwen*, 40 F.3d 1157, 1160–61 (11th Cir.1994).

Second, the Court has already determined that the arrest was supported by probable cause in this case or, at the very least, arguable probable cause. Therefore, Plaintiff F. Woods cannot establish that there "was an absence of probable cause for the original proceeding."

Third, there is no evidence in the record, other than Plaintiffs' speculative statements, to indicate that Defendant Paradis

was motivated, in whole or in part, by malice against Plaintiff F. Woods. Plaintiff F. Woods states, in his papers opposing Defendants' motion for summary judgment and in those supporting his own motion, that Defendant Paradis' preparation of the probable cause affidavit "was obviously done with malice, because no true factual reason existed for the arrest of Francis Woods." Again, the Court finds Defendant Paradis' undisputed facts that F. Woods was speeding excessively through a residential and construction zone to support a finding of probable cause to arrest F. Woods. *See Kesler*, 323 F.3d at 884 ("The existence of probable cause, and in particular the facts showing that probable cause, contradict any suggestion of malicious intent or bad faith."). Plaintiff cannot defeat Defendants' motion for summary judgment with speculative assertions unsupported by any record evidence. Therefore, Defendants are entitled to summary judgment on Plaintiff F. Woods' malicious prosecution claim under § 1983.

### D. First Amendment Retaliation Claim Under § 1983

■■■ Plaintiff F. Woods further claims that he is entitled to summary judgment on his § 1983 First Amendment retaliation claim. In support of his claim, F. Woods states that his arrest "was, in part, the result of Francis Woods questioning the lawful authority of Mark Paradis to arrest and detain him. There was no other reason but retaliation." Pls.' Mot. for Summ. J. at 15. However, because Defendant Paradis has demonstrated the existence of probable cause supporting the arrest, F. Woods cannot succeed on his retaliation claim. *See Kesler*, 323 F.3d at 883; *see also Dahl v. Holley*, 312 F.3d 1228, 1236 (11th Cir.2002) (affirming summary judgment on retaliatory arrest claim and stating that "[w]hatever the officer's motiva-

tion ... the existence of probable cause ... defeats [plaintiff's] claim"); *Redd v. City of Enterprise,* 140 F.3d 1378, 1383 (11th Cir.1998) ("Because we hold that the officers had arguable probable cause to arrest [the plaintiff] for disorderly conduct, we must hold that the [defendant] officers are also entitled to qualified immunity from the plaintiffs' First Amendment claims.").

Furthermore, F. Woods' own allegations and testimony establish that he was already under arrest and handcuffed before he asked Defendant Paradis any questions. *See* Am. Compl. at ¶¶ 34–35; *see also* Pl.'s Dep. at 36–37; Pl.'s Statement at 11; Paradis Aff. at ¶ 18. Therefore, Plaintiff's claim that he was retaliated against by being arrested as a result of his "questioning the lawful authority" of Defendant Paradis to arrest him is logically inconsistent. For these reasons, Defendants are entitled to summary judgment on F. Woods' claim of First Amendment retaliation.

### E. State Tort False Arrest and Malicious Prosecution Claims

Because Plaintiff F. Woods cannot succeed on his federal false arrest and malicious prosecution claims, then his state claims on the same causes of action must likewise fail. *See L.A. Draper & Son v. Wheelabrator–Frye, Inc.,* 735 F.2d 414, 428 (11th Cir.1984) ("indeed, if the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of the state claims") (citing *United*

*Mine Workers of America v. Gibbs* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *see also Eubanks,* 40 F.3d at 1161–62. Therefore, Defendants are entitled to summary judgment on F. Woods' state claims for false arrest and for malicious prosecution.[8]

### F. Loss of Consortium Claim

▮▮▮▮▮ Finally, the parties each seek summary judgment on M. Woods' claim of loss of consortium. In order to prevail on her claim, M. Woods must demonstrate "the loss of the companionship and fellowship of husband and wife and the right of each to the company, cooperation and aid of the other in every conjugal relation." *Wills v. Snapper Creek Nursing Home, Inc.,* 465 So.2d 562, 563–64 (Fla. 3d DCA 1985) (citing *Gates v. Foley,* 247 So.2d 40, 43 (Fla.1971)). In this case, M. Woods admitted, in her deposition testimony, that the arrest has not affected F. Woods, had not affected her relationship with F. Woods, and has not caused M. Woods and F. Woods to seek marital counseling. Moreover, M. Woods has admitted that she and her husband continue to do the same things that they did before the arrest, and that they share the same love and emotional support as they did prior to the arrest. These statements are fatal to M. Woods' loss of consortium claim.[9] *Id.*

---

8. Notably, the standard for determining the existence of probable cause in a false arrest case is the same under both federal and Florida law. *See Rankin,* 133 F.3d at 1435.

9. In any event, because F. Woods cannot sustain his own claims against Defendants, M. Woods cannot succeed on the derivative claim of loss of consortium. *See Stickney v. E.R.*

*Squibb & Sons, Inc.,* 377 F.Supp. 785, 787 (M.D.Fla.1974) ("'[A]n essential element of a wife's cause of action for loss of consortium attendant on a negligent injury to her husband is the fact or right of recovery in the husband as against the same defendant from whom the wife seeks to recover for loss of consortium.'").

## IV. CONCLUSION

For the reasons stated above, it is hereby

ORDERED that:

(1) Defendants' Motion for Summary Judgment [DE–46] is GRANTED. Defendants Mark Paradis and City of Miramar shall be awarded case dispositive summary judgment on Plaintiffs Francis and Maggie Woods' claims as asserted in the First Amended Complaint;

(2) Plaintiffs' Motion for Summary Judgment [DE–54] is DENIED;

(3) Defendants' Motion to Strike the Affidavit of Lewis Fishman [DE–69] is GRANTED. The affidavit of Lewis Fishman is STRICKEN and is not considered by the Court in connection with Plaintiffs' Motion for Summary Judgment;

(4) All pending motions not otherwise ruled upon are DENIED AS MOOT; and

(5) This case is CLOSED.