[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-15631

_____

D.C. Docket No. 1:11-cv-02647-TWT

JOHN A. JENKINS,

Plaintiff - Appellant,

versus

JAMES GAITHER,
JOHN M. ACOSTA,
Butts County Deputy Sheriffs,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(October 4, 2013)

Before PRYOR and ANDERSON, Circuit Judges, and WALTER,* District Judge.

PER CURIAM:

---

* Honorable Donald E. Walter, United States District Judge for the Western District of Louisiana, sitting by designation.

This appeal presents two questions: (1) whether a law enforcement officer who had received a report of erratic driving and who had identified the vehicle being driven erratically had arguable reasonable suspicion to stop that vehicle and question its driver; and (2) whether officers who had received a report from an off-duty officer about a vehicle weaving across the road and who had later determined that the driver had first denied, but later admitted, that he had consumed an alcoholic beverage that evening, had placed smokeless tobacco in his mouth, and refused to take a field sobriety test had arguable probable cause to arrest the driver for driving under the influence. Deputy James Gaither of the Butts County Sheriff's Office stopped John Jenkins after he received a report Jenkins's vehicle was being driven erratically. Gaither and Deputy John Acosta arrested Jenkins for driving under the influence. Jenkins later submitted to a test of his blood for alcohol, and the charges against him were dropped. Jenkins sued Gaither and Acosta and alleged that they had violated his right to be free of unreasonable seizures under the Fourth and Fourteenth Amendments. See U.S. Const. Amends. IV, XIV; 42 U.S.C. § 1983. The district court granted a summary judgment in favor of Gaither and Acosta based on qualified immunity. We affirm.

## I.   BACKGROUND

John Jenkins consumed a single beer with dinner between 6:00 and 6:30 p.m. on October 13, 2009. Around 10:00 p.m., Jenkins drove home through Butts

2

County, Georgia. Wil Smith, an off duty officer of the Department of Natural Resources officer and a peace officer in Georgia, observed Jenkins driving slowly through Smith's neighborhood. Because he knew that there had been several break-ins in the area, Smith followed Jenkins. Smith observed Jenkins driving erratically and crossing the lines on the road. Jenkins turned north on Highway 42, and Smith followed him because he was travelling in the same direction. Smith observed that Jenkins continued to travel at an unusually slow rate and weave over the roadway. Based on his training as a law enforcement officer, Smith concluded that Jenkins was impaired. Smith called 911 and reported this information to the operator. Smith stayed on the phone with the operator and gave updates on his location.

Deputy James Gaither of the Butts County Sheriff's Office responded when the dispatcher relayed the report of a vehicle that was all over the roadway, and his entire pursuit and interaction with Jenkins were recorded by the camera on the dash of his patrol vehicle. When Gaither caught up with Jenkins and Smith, Smith pulled to the side of the road and reported that the vehicle directly in front of him was the one that had been weaving. Gaither followed Jenkins for about 25 seconds. Gaither turned on his blue lights, and Jenkins pulled over to the side of the road.

3

Gaither approached the passenger side of Jenkins's truck and told him that he had pulled him over because he had received a report that he was weaving and all over the roadway.  Gaither asked Jenkins to exit the vehicle and stand behind the rear of the truck, and Jenkins complied.  Gaither asked Jenkins if he had anything to drink that night, and Jenkins responded, "No."  Gaither then asked, "None, whatsoever?" and Jenkins responded, "Nope."  Gaither asked if Jenkins drank alcoholic beverages, and Jenkins said that he did.  Gaither asked, "When was the last time you consumed alcohol?"  Jenkins responded, "'Bout four hours ago."

Gaither returned to his vehicle and reported the information from Jenkins's driver's license to the dispatcher.  While Gaither waited for a response from the dispatcher, Jenkins reached into his pocket and pulled out smokeless tobacco.  Gaither yelled from his vehicle, "Do not put any dip in your mouth."

Gaither then joined Jenkins behind his truck and said, "To make sure that you're safe to drive on the roadway, there's a few exercises that I would like for you to perform."  Jenkins asked Gaither whether he was certified to administer a field sobriety test.  Jenkins then insisted that he was not drunk and that the field sobriety test was voluntary.  Without confirming that Gaither was not certified, Jenkins said that he was "not going to do" the field sobriety test.

Gaither asked Deputy John Acosta to assist him, and after about four minutes, Deputy John Acosta arrived.  Gaither explained what had happened to

4

Acosta, and Acosta explained to Jenkins why he had been pulled over.  Acosta asked Jenkins to remove the smokeless tobacco in his mouth, and Jenkins reached into his mouth and removed some smokeless tobacco.

After Acosta spoke to Jenkins, Gaither and Acosta met next to Gaither's patrol car.  Acosta contacted the dispatcher and asked who had reported the erratic driving.  The dispatcher responded that the report came from "DNR 319," which indicated that the report came from an officer of the Department of Natural Resources with the badge number 319.  Acosta responded, "Really? Okay." Another officer who had responded for backup then asked who reported the erratic driving, and Acosta replied, "Wil Smith."

Acosta called Smith and asked about what he had observed.  After his call with Smith, Acosta told the other officers that Smith had observed Jenkins weaving back and forth and failing to maintain his lane.  Acosta also reported that Smith had agreed to write a statement about what he had observed.

Gaither and Acosta arrested Jenkins for driving under the influence.  Acosta explained to Jenkins that his driving had been reported by an off duty officer and that he was under arrest for driving under the influence and failing to maintain a lane.  The deputies took Jenkins to the Butts County jail, and he submitted to a blood alcohol test.  Jenkins requested and paid for his own blood alcohol test.  The

5

results of Jenkins's blood test showed that he had no alcohol in his system.  The charges against Jenkins were dropped.

Jenkins complained that Gaither and Acosta violated his Fourth and Fourteenth Amendment right to be free from unconstitutional searches and seizures.  Jenkins argued that Gaither lacked reasonable suspicion to pull him over and that Gaither and Acosta lacked probable cause to arrest him.  Gaither and Acosta moved for summary judgment on the basis of qualified immunity, and the district court granted a summary judgment in favor of Gaither and Acosta because Gaither had arguable reasonable suspicion to stop Jenkins and Gaither and Acosta had arguable probable cause to arrest Jenkins.

## II.    STANDARD OF REVIEW

"We review a district court's grant or denial of a motion for summary judgment de novo."  Myers v. Bowman, 713 F.3d 1319, 1326 (11th Cir. 2013) (quoting Harris v. Bd. of Educ. of Atlanta, 105 F.3d 591, 595 (11th Cir. 1997)).

## III.    DISCUSSION

We divide our discussion of this appeal in two parts.  First, we explain that Gaither had arguable reasonable suspicion to stop Jenkins.  Second, we explain that Gaither and Acosta had arguable probable cause to arrest Jenkins.

6

### A. Gaither Had Arguable Reasonable Suspicion to Stop Jenkins.

"When an officer asserts qualified immunity, the issue is not whether reasonable suspicion existed in fact, but whether the officer had 'arguable' reasonable suspicion to support an investigatory stop." Jackson v. Sauls, 206 F.3d 1156, 1166 (11th Cir. 2000). "[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123, 120 S. Ct. 673, 675 (2000). "[Although] 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." Id. at 123, 120 S. Ct. at 675–76. "[A] court must examine the totality of the circumstances . . . to determine whether" an officer had reasonable suspicion for a stop. United States v. Lewis, 674 F.3d 1298, 1303 (11th Cir. 2012). "[T]he 'officer's motive in making the traffic stop does not invalidate what is otherwise objectively justifiable behavior under the Fourth Amendment.'" United States v. Harris, 526 F.3d 1334, 1337 (11th Cir. 2008) (quoting United States v. Simmons, 172 F.3d 775, 778 (11th Cir. 1999)).

Gaither had arguable reasonable suspicion to stop Jenkins. Georgia law provides that "[a] person shall not drive or be in actual physical control of any

7

moving vehicle while[] [u]nder the influence of alcohol to the extent that it is less safe for the person to drive." O.C.G.A. § 40-6-391(a). Georgia law also provides that "[a] vehicle shall be driven as nearly as practicable within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." Id. § 40-6-48(1). And Georgia law provides that "[n]o person shall . . . move right or left upon a roadway unless and until such movement can be made with reasonable safety." Id. § 40-6-123(a). Gaither responded to a report that Jenkins was driving at an unusual speed and weaving across the road. And the person who reported this erratic driving identified Jenkins's vehicle. This information was sufficient for Gaither to have arguable reasonable suspicion that Jenkins had violated traffic laws and was driving under the influence.

*B. Gaither and Acosta Had Arguable Probable Cause to Arrest Jenkins.*

 "An arrest without probable cause is unconstitutional, but officers who make such an arrest are entitled to qualified immunity if there was arguable probable cause." Jones v. Cannon, 174 F.3d 1271, 1283 (11th Cir. 1999). "The standard for arguable probable cause is 'whether a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well-established law.'" Gold v. City of Miami, 121 F.3d 1442, 1445 (11th Cir. 1997) (quoting

8

Eubanks v. Gerwen, 40 F.3d 1157, 1160 (11th Cir. 1994)).  "The standard is an objective one and does not include an inquiry into the officer's subjective intent or beliefs."  Grider v. City of Auburn, Ala., 618 F.3d 1240, 1257 (11th Cir. 2010).

"Probable cause to arrest exists when an arrest is objectively reasonable based on the totality of the circumstances."  Myers, 713 F.3d at 1326 (quoting Kingsland v. City of Miami, 382 F.3d 1220, 1226 (11th Cir. 2004)).  "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  Id. (quoting Kingsland, 382 F.3d at 1226).  "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."  Id. (quoting Gates, 462 U.S. at 243 n.13, 103 S. Ct. at 2335 n.13).

Under Georgia law, "A person shall not drive or be in actual physical control of any moving vehicle while[] [u]nder the influence of alcohol to the extent that it is less safe for the person to drive," O.C.G.A. § 40-6-391(a), and Gaither and Acosta had arguable probable cause to believe that Jenkins had violated this law based on four circumstances.  First, Gaither and Acosta had received a report that Jenkins was driving erratically and failing to maintain his lane.  The report had been submitted by a law enforcement officer, Smith.  And Acosta had discussed

Jenkins's driving with Smith, who had confirmed that Jenkins had driven erratically and failed to maintain his lane, and Acosta had relayed this report to Gaither. Second, Jenkins had told Gaither that he had consumed an alcoholic beverage earlier that evening only seconds after telling Gaither that he had nothing to drink that night. Third, Gaither and Acosta both had observed that Jenkins had smokeless tobacco in his mouth and that smokeless tobacco could be used to cover the smell of alcohol. And Gaither had observed Jenkins try to place more smokeless tobacco in his mouth while Gaither checked the information on his driver's license. Fourth, Jenkins had refused to perform field sobriety exercises. Under Georgia law, "refusal to submit to field sobriety tests . . . is . . . circumstantial evidence of intoxication and together with other evidence [] support[s] an inference that [the driver] was an impaired driver." Hoffman v. State, 620 S.E.2d 598, 600 (Ga. App. 2005) (quoting Jones v. State, 614 S.E.2d 820, 822 (Ga. App. 2005); see also Lee v. State, 634 S.E.2d 837, 838 (Ga. App. 2006) (holding that officer testimony that a driver "refused to submit to any field sobriety tests" and several other factors "authorized the trial court to find beyond a reasonable doubt that [the driver] was guilty of DUI."); Long v. State, 610 S.E.2d 74, 76 (Ga. App. 2004) ("[T]he jury was authorized to consider Long's refusal, prior to her arrest, to submit to field sobriety tests."); Bravo v. State, 548 S.E.2d 129, 130 (Ga. App. 2001) ("Evidence that an accused, who was not in custody at

10

the time, refused to take field sobriety tests is admissible in a trial for DUI."). In the light of all this evidence, Gaither and Acosta had arguable probable cause to arrest Jenkins for driving under the influence.

## IV.  CONCLUSION

We **AFFIRM** the summary judgment in favor of Gaither and Acosta.

WALTER, District Judge, concurring in part and dissenting in part:

I join in part I of the majority opinion which holds that Gaither had reasonable suspicion to stop Jenkins. I do not agree, however, with the majority's conclusion in part II that Gaither and Acosta had arguable probable cause to arrest Jenkins.

As an initial matter, it is important to note that this dissent may be difficult to completely understand without having seen the video of the lead- up to the arrest. It is especially true here that a picture speaks a thousand words. The Supreme Court has held that a court may rely on a videotape if a party's version of the facts can be discredited by the tape. *Scott v. Harris*, 550 U.S. 373 (2007). In my opinion, the video at issue in this case shows a bullying law enforcement officer arresting a citizen who dared question the officer's authority and who was not under the influence of drugs or alcohol.

Put simply, there was no arguable probable cause to arrest Jenkins. As the majority states, for probable cause to exist, an arrest must be objectively reasonable based on the totality of the circumstances. *Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003). In this case, Jenkins was cited for DUI/Drugs. Jenkins argues, and I agree, that no reasonable person or officer could, upon viewing the video, believe that Jenkins was staggering or slurring his speech. The majority ignores the combative nature of Gaither immediately after Jenkins asked Gaither

12

whether he was certified to administer a field sobriety test. In my opinion, Jenkins'

question, a reasonable one, was the proximate cause of his arrest.

The majority cites four circumstances that they find support their holding

that Gaither and Acosta had arguable probable cause that Jenkins violated Georgia

law. However, most of the reasons listed by the majority fail to account for the

totality of the circumstances leading up to the arrest. Specifically, the majority

states that Jenkins' inconsistent statements regarding his consumption of alcohol

supports a finding of probable cause. A closer examination of his statements show

that there is no inconsistency. Initially Jenkins was asked whether he had anything

to drink that *night* and he responded that he had not. Later, Jenkins states that he

had consumed alcohol about four hours before the time he was pulled over. This

questioning occurred shortly after 10 p.m. Four hours earlier would mean that he

consumed an alcoholic beverage around 6 p.m.[1] Accordingly, there is no

inconsistency in his statements because he had not consumed any alcohol that

*night*. Context and temporal specificity matter. The colloquy continued:

> GAITHER: Okay. Do you drink any alcoholic beverages?
>
> JENKINS: I do.

---

[1] I believe that it is worth noting that the sun was still up at the time he consumed the alcoholic beverage earlier that day, but had set by the time of his arrest. According to the U.S. Naval Observatory, sunset occurred at 7:06 p.m. on October 13, 2009, in Atlanta, Georgia. *See* U.S. Naval Observatory Sun and Moon Data for October 13, 2009, http://aa.usno.navy.mil/cgi-bin/aa_pap.pl.

GAITHER: You do? Okay. So when was the last time you consumed alcohol?

(Jenkins looks at watch.)

JENKINS: About four hours ago.

GAITHER: About four hours ago?

JENKINS: Uh-huh.

GAITHER: Okay. And where were you when you consumed this alcoholic beverage?

JENKINS: Up in DeKalb County.

GAITHER: In DeKalb County? Okay. Do you know where you are right now?

JENKINS: Yeah.

GAITHER: Where are you now?

JENKINS: I'm in Butts County.

GAITHER: (Belligerently)[2] You're in Butts County. And my question to you is why when you know you've consumed alcohol, why are you out here driving on the -- on the roadway?

JENKINS: Why don't you ask me why I might have been weaving?

GAITHER: I'm -- no, no, no, no, no. I'm asking the questions, so you understand me. Okay?

JENKINS: Okay.

---

[2] Gaither continues his "in your face" confrontation style throughout this exchange.

GAITHER: And I'll just ask the same question. Why would you have consumed alcoholic beverages while you're out here on the roadway driving?

JENKINS: Because I'm working.

GAITHER: Okay. But you know that you --

JENKINS: Uh-huh.

GAITHER: -- should not be out here on the roadway, especially with a commercial driver -- even though you're not in a commercial vehicle –

JENKINS: Uh-huh.

GAITHER: -- but you're out here on the roadway --

JENKINS: Uh-huh.

GAITHER: -- *while* consuming -- [emphasis added]

JENKINS: Did you --

GAITHER: -- alcoholic beverage?

JENKINS: Wait a minute.

GAITHER: Like I said, I'm asking the questions. Plain and simple.

Okay?

JENKINS: Okay.

GAITHER: I just asked a question.

JENKINS: Okay.

GAITHER: That's all I did was ask you a question. Again -- I'm not going to keep repeating myself -- why are you consuming alcoholic

15

beverages driving out here on the roadway?

JENKINS: Am -- am I under suspicion of anything?

GAITHER: I just asked a question.

JENKINS: I'm not going to answer your question.

GAITHER: You don't want to answer any questions?

JENKINS: No.

GAITHER: Hold tight right there. *The defendant might be going to jail.* [Emphasis added]. [R. 23 (video)].

The majority ignores the inconsistencies among the officers' later reports and depositions and the video and blood tests. For instance, in his deposition, Gaither stated that Jenkins slurred the word "speeding" while Jenkins was still in the car. [Gaither Depo. at 125–26]. He then noted that, after reviewing the video, he "didn't observe slurred speech" when Jenkins responded to his question about whether he had been drinking. Additionally, Gaither testified that Jenkins "swayed" when checking his watch to determine how long it had been since his last drink, indicating unsteadiness, but didn't list that in his report. [Gaither Depo. at 71]. I believe that, in light of the inconsistencies between the report and the deposition, and the ultimate fact that Jenkins' blood tests came back negative for alcohol, a fact finder could find that Gaither exaggerated and/or falsified critical parts of his report to justify the arrest. To reiterate: the video of the incident strongly undermines the officers' rationale for the arrest. In *Scott v. Harris*, the

16

Supreme Court stressed, "The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape." *Scott* at 380-81.

For the aforementioned reasons, I believe a jury in possession of all relevant facts, to include cross examination of the Defendants, could find that (1) Jenkins was not staggering nor slurring his speech; (2) Gaither did not observe glassy eyes nor smell alcohol; and (3) Gaither did not see Jenkins weave. These conclusions are strongly indicated by the negative blood test results. To the extent that Gaither relies on Jenkins' refusal to submit to the field sobriety tests, I believe a jury could find that Jenkins' refusal was justified considering that Gaither was not certified. To the extent that the facts call Gaither's actions into question, I believe they give the lie to Acosta's reports of smelling alcohol and seeing glassy eyes at the scene.

For the foregoing reasons, I respectfully dissent.