[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-13662
Non-Argument Calendar

_____

D.C. Docket No. 6:15-cv-01845-CEM-GJK

KENNETH R. HOCHSTEIN,

Plaintiff - Appellant,

versus

JERRY L. DEMINGS,
AMANDA BRUNCHEEN,
PHILIP GRAVES,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(February 7, 2018)

Before MARCUS, ROSENBAUM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

In 2011, Kenneth Hochstein ("Plaintiff") was arrested as part of an undercover sting operation targeting sexual predators who use the internet to solicit children. Three years after the charges against him were dismissed in Florida state court, Plaintiff filed this lawsuit under 42 U.S.C. § 1983 against the officers involved in his arrest—Officers Philip Graves and Amanda Brunscheen[1]—and their supervisor—Sheriff Jerry Demings—alleging that Plaintiff was falsely arrested and maliciously prosecuted in violation of his constitutional rights. The district court dismissed the claims against Officer Brunscheen and granted summary judgment to Officer Graves and Sheriff Demings, concluding that all Defendants were entitled to qualified immunity.

On appeal, Plaintiff contends that the district court erred by granting summary judgment to Officer Graves and Sheriff Demings.[2] We, however, agree with the district court.

---

[1] The case caption erroneously misspells Officer Brunscheen's last name as "Bruncheen." We use the correct spelling of her name throughout this opinion.

[2] Plaintiff does not challenge in his brief the district court's dismissal of his claims against Officer Brunscheen. Moreover, he has confirmed in a separate pleading that he does not pursue any challenge to that ruling. Accordingly, we likewise do not address this matter. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.")

2

I.    **BACKGROUND**

A.    **Factual Background**

The facts, viewed in the light most favorable to Plaintiff and with all factual disputes resolved in his favor, are as follows.  In 2011, the Orange County Sheriff's Office was participating in a multi-agency undercover operation known as "Operation Spider Web."  Operation Spider Web was designed as a sting operation to catch sexual predators who use the internet to solicit children.  Officer Graves worked on the task force as a "chatter," responsible for communicating with suspected predators.  Officer Brunscheen also worked on the task force, and her role included talking to suspected predators over the phone and in-person.

On August 8, 2011, Officer Graves posted an ad on Craigslist in the "Casual Encounters" section titled "Your baby is back - w4m - Orlando."  The body of the ad stated "Your baby is back.  You know what I mean.  Be ready to help.  If you don't know what I mean then, maybe this is not for you, and obviously we don't know you."

Shortly after, Officer Graves received an email from Plaintiff—using the email address "Aim2pl33z@aol.com"—responding to the ad.  In the conversation that followed, Officer Graves posed as "Karen Johnson," an adult woman who was looking for a man to have sex with her fourteen-year-old daughter "Amber":

3

Plaintiff:    yes NOW I can cum lemme see ur pic

"Johnson":    Do I know you or does Amber know you?

I don't send pics till I know and can trust who I am talking to. Send yours first

[Further conversation about exchanging pictures]

"Johnson":    single mom here with a wonderful 14 year old daughter, i want her to learn from a good man like I did so.

I know she can make a lot of mistakes in the beginning

this needs to be kept in confidence i have a lot to loose here

we usually only talk to our regular mentors

Plaintiff:    Ok what are u DOWN to do ???  I mean whats the deal ?  I was jokin bout the rob me, TELL ME I am feelin some kind of way and ready to cum c u

Plaintiff:    just lemme cum SEE U !! If ur down TEXT ME or call even XXX-XXX-XXXX

"Johnson":    did u get my last email

this is not about me it is about her Amber

Plaintiff:    I can cum just where are u???  are u gonna send me pics ?  and I have to sign off so u have my number XXX-XXX-XXXX

After Plaintiff insisted on "Johnson" providing an address so Plaintiff could see her in person, the conversation turned back to "Amber":

"Johnson":    U have not told me what u want to teach my daughter

Plaintiff:    im not bout talk let me cum c u

"Johnson":    ya no sorry I need to know what to expect from the man b4 that

4

what r u asking for

Plaintiff: its more exciting to do as I go and walk in NOT knowing and let it go places IS MORE a turn on then SAYING what I do

"Johnson": ok well good luck with that

that is not what we are looking for

this is about her and I am not setting her or us up for anything

so when u want 2 tell us ur details about what u r asking for then let us know and we r ready to meet

Plaintiff: ok taste and watch h cum will u also be there or participate at all

"Johnson": what???  taste and watch what?

baby stop playing games this is getting old.  if u want her so had u would think u would just tell us what u r asking for

Plaintiff: eat her pussy suck it as im lookin up at her cum in my mouth !! im soo h,,,,!!!

"Johnson": i can tell and we like that

r u asking for anything else?

did u send us a pic and did u send us one

Plaintiff: i would love for you to join BUT DAMM I dont see any pics of ANY OF U and u seen my pics !!

"Johnson": [sends two pictures of women, one of which is of a teenage girl]

that is her and i

well this is about her not that i have not done that in the past but i want her to learn first

5

Plaintiff:    if this Is real and all u say is THEN I WANNA see pics showing more !! CUM ON NOW

"Johnson":    what?

This is real and If u dont want we will move on

Plaintiff:    listen IM HORNY AS FUCK and I WANNA know your ALL U say those pics look kind of searched for and soo internet like so U show me some pics showing MORE I am READY TO CUM now and suck pussy and MORE

"Johnson":    [sends three pictures of women, two of which appear to be of a teenage girl]

ok well we aint fake or a set up or a cop but we need some more pics of u 2 so we feel comfy

Plaintiff:    I think I would be one worrying most of all LIKE I SAID before I WILL come eat pussy and fuck or anything as long as they 18 and up IM GOOD so we have no problem so why do u mention police please stop saying THAT it makes me think u tryin to do something illegal I aint into that BUT im HORNY and ready otherwise !

"Johnson":    what the hell ru talkin about i told u who i was and who she was she is my daughter 14 yrs old remember

forget it this is getting stupid

i have a lot to loose here so that is why i need to make sure u r not a cop

i hate endless emails

Plaintiff:    ok officer I AINT lookin to get LOCKED up !!!  Like I SAID I cum u do SOMETHING to me and show ME u aint'tryin to BUST someone and well talk.

6

Plaintiff and "Johnson" continued to discuss Plaintiff's desire to meet for sex so long as "Johnson" was not a cop, but "Johnson" failed to persuade Plaintiff, and the conversation ended.

Roughly two and a half months later, on October 28, Officer Graves—still posing as "Karen Johnson"—posted another Craigslist ad in the "Casual Encounters" section titled "Woman in need if help - w4m - 34 (Orlando)." The ad stated "Mom of wonderful girl. Looking for a good man who can be there for her. Serious replz only." Using the same email address as in August, Plaintiff replied to the ad:

Plaintiff:     can I see a pic

"Johnson":   hey we talked before

Plaintiff:     we did ???? when ,, send ur pic

"Johnson" responded by sending pictures of what appear to be the same woman and teenage girl that were sent previously in August, and Plaintiff provided "Johnson" his phone number.

On October 29, "Johnson" began texting with Plaintiff:

"Johnson":   hey it is karen

Plaintiff:     ???

Plaintiff:     from where

"Johnson":   ok done playing games it is karen from cl

7

Plaintiff:  oh.  ..wat u doin send ur pic for ur caller id

\*    \*    \*

"Johnson":  you already saw them

Plaintiff:  where u at. ..wat u dwn for

"Johnson":  ok if you dont remember we should just forget it

Plaintiff:  I do remember I'm just asking what you willing and not willing to do i wanna know and exactly what do I need to bring with me

"Johnson":  we are up for anything but you said you would not freak out when you see she is 14 rite

Plaintiff:  where u at i get off at 1130 . . . need address for gps[3]

On October 30, "Johnson" and Plaintiff texted about whether Plaintiff was coming over or not.  Among other things, Plaintiff said "send me pics.  of u both look now."

On October 31, Plaintiff called "Johnson," and Officer Brunscheen—posing as "Johnson"—answered.  During the phone call, Plaintiff asked "Johnson" if he could come to her house.  "Johnson" said it was okay and asked if Plaintiff had condoms.  "Johnson" also asked if Plaintiff was "good" with "Amber."  Plaintiff responded "yeah."  After that, "Johnson" provided an address and the conversation continued via text:

---

[3] The ellipsis here and in other block quotes do not indicate omissions.  They are present in the texts and emails between "Johnson" and Plaintiff.

8

"Johnson":   where are you coming from

hello?

Plaintiff:   okay ..never did 3sum before . . . will you come out and give me a hug and kisses then escort me in to break the ice

The two continued to text about Plaintiff's nervousness and how far away he was as he travelled to meet "Johnson" and "Amber." At one point "Johnson" mentioned that she needed to "get her in the shower," and texted roughly ten minutes later to say that "she is about out of the shower." Shortly after, Plaintiff arrived at the address "Johnson" had given him but called "Johnson" because he was still nervous about the encounter:

Plaintiff:   Hello.

"Johnson"   Hey.

Plaintiff:   Hey, are you nervous, I'm nervous, I'm just saying, I'm trying to remember . . .

"Johnson":  Are you here?

Plaintiff:   Yeah, I'm outside. I mean, I'm finding a lot of . . . and I wanted we could make sure . . .

\*       \*       \*

Plaintiff:   So do you want to do like a quick.

"Johnson":  Yeah I want to do a threesome.

Plaintiff:   Oh I didn't know that, oh I thought it was you by yourself, I mean I'm fine with that.

"Johnson":  No it's me and "Amber."

9

Plaintiff:     Oh, ok, it's just you two?

"Johnson":   Yeah.

Plaintiff:     Are you roommates?

"Johnson":   No she's my daughter, look I told you all this.

Plaintiff:     I don't recall, what . . .

"Johnson":   Look, are you down to fuck or what, because that's what we're looking for tonight?

Plaintiff:     I'm down, I'm always down.

"Johnson":   Alright, well get your ass over here so I can help you.[4]

After the conversation ended, Plaintiff exited his car and Officer Brunscheen—still posing as "Johnson"—came outside to escort Plaintiff into the house.  Plaintiff followed Officer Brunscheen inside and was placed under arrest.

## B.    Procedural History

Plaintiff was initially charged with using the internet to solicit a person believed to be the parent of a minor to consent to illegal sexual conduct with the minor (Fla. Stat. § 847.0135(3)(b)), traveling to engage in illegal sexual conduct with a minor after soliciting a person believed to be the minor's parent (Fla. Stat. § 847.0135(4)(b)), and attempting to engage in unlawful sexual activity with a minor between the ages of twelve and sixteen (Fla. Stat. §§ 777.04, 800.04(4)(a)).

---

[4]  The details of this conversation come from a court order issued by the Florida state court that handled the criminal proceeding against Plaintiff.

10

The first two charges were later amended to charge direct solicitation of a person believed to be a minor (Fla. Stat. § 847.0135(3)) and traveling to engage in illegal sexual conduct with a minor after direct solicitation of a person believed to be a minor (Fla. Stat. § 847.0135(4)(a)).

The Florida state court dismissed the first two charges because Plaintiff "communicated solely with a law enforcement officer purporting to be an adult"—not a minor or a person pretending to be a minor. The court dismissed the amended charges because there was insufficient evidence that Plaintiff intended to commit a sexual act with a minor and because he failed to perform an overt act towards its commission.

About three years later, on November 30, 2015, Plaintiff filed this lawsuit under 42 U.S.C. § 1983 against Officer Brunscheen, Officer Graves, and their supervisor Sheriff Demings alleging that Plaintiff had been falsely arrested and maliciously prosecuted in violation of his constitutional rights. Officer Brunscheen moved to dismiss the claims against her under Rule 12(b)(6) for failure to state a claim and because her actions were otherwise protected by qualified immunity. The district court granted her motion and terminated her from the case.

After discovery, Officer Graves and Sheriff Demings moved for summary judgment on qualified immunity grounds. The district court granted the motion,

11

concluding that Officer Graves had arguable probable cause to arrest Plaintiff and that there was insufficient evidence to establish the malicious prosecution claim. Because there was no underlying constitutional violation, the district court concluded that Sheriff Demings could not be liable either.  Accordingly, the district court entered judgment for Officer Graves and Sheriff Demings.

Plaintiff filed a timely appeal challenging the district court's grant of summary judgment to Officer Graves and Sheriff Demings.

## II.    STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo* and apply the same legal standards as the district court.  *Stephens v. DeGiovanni*, 852 F.3d 1298, 1313 (11th Cir. 2017).  When reviewing a summary judgment motion based on qualified immunity, "[w]e resolve all issues of material fact in favor of the plaintiff, and then determine the legal question of whether the defendant is entitled to qualified immunity under that version of the facts."  *Id.* (quoting *Durruthy v. Pastor*, 351 F.3d 1080, 1084 (11th Cir. 2003)).  This gives us the plaintiff's "best case," so disputed factual issues "cannot foreclose the grant or denial of summary judgment based on qualified immunity."  *Id.* at 1314 (quoting *Bates v. Harvey*, 518 F.3d 1233, 1239 (11th Cir. 2008)).

## III.    DISCUSSION

We first address Plaintiff's false arrest and malicious prosecution claims against Officer Graves and Sheriff Demings.

### A.    Officer Graves

Officer Graves argues that he is protected from Plaintiff's suit by qualified immunity.  "Qualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Lee v. Ferraro*, 284 F.3d 1188, 1193–94 (11th Cir. 2002) (quotation marks omitted).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Qualified immunity thus "allow[s] officials to carry out discretionary duties without the chilling fear of personal liability or harrassive litigation, 'protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law.'" *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009) (citation omitted) (quoting *Lee*, 284 F.3d at 1194).

To be entitled to qualified immunity, "an official must first establish that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Id.* (quoting *Lee*, 284 F.3d at 1194). Once that is established, the plaintiff must then show that qualified immunity is inappropriate by demonstrating: (1) that the facts—taken in the light most favorable to the plaintiff—establish a constitutional violation, and (2) that "it was clearly established at the time of the incident that the actions of [the official] were unconstitutional." [5] *Id.*

Officer Graves was engaged in a discretionary function of his official duties as a police officer when he arrested Plaintiff. *See Crosby v. Monroe Cty.*, 394 F.3d 1328, 1332 (11th Cir. 2004); *Wood v. Kesler*, 323 F.3d 872, 877 (11th Cir. 2003). Thus, whether Officer Graves is entitled to qualified immunity hinges on whether Plaintiff can show (1) a constitutional violation (2) that was clearly established at the time of his arrest and prosecution. We address each claim in turn.

### 1.    False Arrest

Plaintiff asserts that Officer Graves violated his Fourth Amendment rights by arresting him without probable cause. *See Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010) ("An arrest without a warrant and lacking probable

---

[5] We may address these requirements in any order. *McCullough*, 559 F.3d at 1205.

14

cause violates the Constitution and can underpin a § 1983 claim."). "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007). Thus, "[w]hether an officer possesses probable cause . . . depends on the elements of the alleged crime and the operative fact pattern." *Brown*, 608 F.3d at 735. Probable cause is determined by objectively evaluating the totality of the circumstances. *See Carter v. Butts Cty.*, 821 F.3d 1310, 1319 (11th Cir. 2016).

Even if there was not actual probable cause to arrest, an officer is nevertheless entitled to qualified immunity so long as the officer had "arguable probable cause." *Brown*, 608 F.3d at 734. Arguable probable cause exists if "an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997). Under this standard, an officer may "reasonably but mistakenly conclude that probable cause is present" and still be immune from suit. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Arguable probable cause may exist even though an officer may not have definitive proof that every element of a crime has been established, and an officer need not have arguable probable cause for every

15

offense charged.  *See Brown*, 608 F.3d at 735.  For this inquiry, Plaintiff "must demonstrate that no reasonable officer could have found probable cause under the totality of the circumstances."  *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004).

Here, Plaintiff was initially charged with, among other things, using the internet to solicit a person believed to be the parent of a minor to consent to illegal sexual conduct with the minor in violation of Fla. Stat § 847.0135(3)(b)[6] and traveling to engage in an illegal sexual act with a minor after soliciting a person believed to be the minor's parent in violation of Fla. Stat. § 847.0135(4)(b).[7]  The

---

[6]  Fla. Stat. § 847.0135(3)(b) makes it a felony for any person to:

> knowingly use[ ] a computer online service, Internet service, local bulletin board service, or any other device capable of electronic data storage or transmission to:  . . . Solicit, lure, or entice, or attempt to solicit, lure, or entice a parent, legal guardian, or custodian of a child or a person believed to be a parent, legal guardian, or custodian of a child to consent to the participation of such child in [an illegal sexual act] or to otherwise engage in any sexual conduct.

[7]  Fla. Stat. § 847.0135(4)(b) makes it a felony for any person to:

> travel[ ] any distance either within this state, to this state, or from this state by any means . . . for the purpose of engaging in [an illegal sexual act] or to otherwise engage in other unlawful sexual conduct with a child or with another person believed to be a child after using a computer online service, Internet service, local bulletin board service, or any other device capable of electronic data storage or transmission to:  . . . Solicit, lure, or entice, or attempt to solicit, lure, or entice . . . a person believed to be a parent, legal guardian, or custodian of a child to consent to the participation of such child in [an illegal sexual act] or to otherwise engage in any sexual conduct.

district court concluded that Officer Graves had at least arguable probable cause to arrest Plaintiff for either crime.

We agree. Plaintiff has not shown that no reasonable officer could have concluded there was probable cause to arrest Plaintiff. Plaintiff's argument that Officer Graves lacked probable cause boils down to the contention that it was unreasonable for Officer Graves to believe that Plaintiff knew "Amber" was underage and that Plaintiff intended to engage in sexual acts with her. Plaintiff focuses on the statements he made during his last phone call with "Johnson" where he stated that he did not realize "Johnson" was not alone and did not know that "Amber" was her daughter. Yet the undisputed facts reveal that Officer Graves knew that (1) Plaintiff was told repeatedly by "Johnson" in August that she was looking for someone to have sex with her fourteen-year-old daughter "Amber," (2) Plaintiff told "Johnson" directly that he would perform sexual acts on "Amber," and (3) Plaintiff said he remembered "Johnson" two months later, was told again that "Amber" was fourteen years old, and indicated—roughly a half hour before he arrived to meet "Johnson" and "Amber"—that he expected to engage in sexual acts with both. Under these circumstances, a reasonable officer could conclude there was probable cause to arrest for violation of § 847.0135(3)(b) or § 847.0135(4)(b).

17

### 2.    Malicious Prosecution

Plaintiff also asserts a § 1983 malicious prosecution claim against Officer Graves for allegedly "maliciously initiating" the criminal prosecution against Plaintiff by sending "vague and cryptic messages" to Plaintiff during the investigation, participating in an illegitimate sting operation, and withholding or misrepresenting evidence to the prosecutor. "To establish a § 1983 malicious prosecution claim, the plaintiff must prove two things: (1) the elements of the common law tort of malicious prosecution; *and* (2) a violation of his Fourth Amendment right to be free from unreasonable seizures." *Grider v. City of Auburn*, 618 F.3d 1240, 1256 (11th Cir. 2010) (emphasis in original).

Again, Officer Graves is entitled to qualified immunity. To be entitled to qualified immunity against a malicious prosecution claim, an officer need only have arguable probable cause—the same as with false arrest. *Grider*, 618 F.3d at 1257 n.25. Because we conclude that Officer Graves had arguable probable cause to arrest Plaintiff, Officer Graves is also entitled to qualified immunity for Plaintiff's malicious prosecution claim.

Also, Florida common law requires, among other things, that a plaintiff establish that the defendant "was the legal cause of the original proceeding." *Kingsland*, 382 F.3d at 1234. Plaintiff, however, has failed to provide any

18

evidence to support his conclusory allegations about Officer Graves's conduct. Because the record does not show that Officer Graves "had anything to do with the decision whether or not to prosecute," Plaintiff cannot make out a claim for malicious prosecution against him.  *See Eubanks v. Gerwen*, 40 F.3d 1157, 1160–61 (11th Cir. 1994).

### B.    Sheriff Demings

Plaintiff also brings § 1983 claims for both false arrest and malicious prosecution against Officer Graves's supervisor Sheriff Demings based on Officer Graves's actions.  In a § 1983 suit, "to hold a supervisor liable a plaintiff must show that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." *Keith v. DeKalb Cty.*, 749 F.3d 1034, 1047–48 (11th Cir. 2014).  Plaintiff does not allege that Sheriff Demings personally participated in any constitutional violations, but asserts instead that he had customs and policies in place that caused such violations, was deliberately indifferent to the widespread constitutional violations committed by his subordinates, and knew that his subordinates would act unlawfully and failed to stop them.

Although such action (or inaction) by a supervisor can be grounds for § 1983 liability, *id.* at 1048, Plaintiff has produced no evidence to support these summary

19

allegations. In fact, the only relevant evidence in the record indicates that Plaintiff's generalized allegations are unsupported. At most, Plaintiff points to "Special Order No. 64.0"—the order that sets forth the procedures for the Sex Crimes Squad—and contends that there is an issue of fact as to whether it was sufficient to prevent arrests without probable cause and malicious prosecutions. Yet the burden to establish his cause of action is on Plaintiff, not Sheriff Demings. *Id.* at 1047–48. And the Order itself states that officers in the Sex Crimes Squad shall follow all applicable laws and agency directives, including directives that forbid arrests without probable cause, and shall not initiate criminal charges without probable cause. As a result, Plaintiff has failed to present evidence sufficient to establish that Sheriff Demings's conduct had a causal connection to any constitutional violations.

## CONCLUSION

We **AFFIRM** the district court's order granting summary judgment to Officer Graves and Sheriff Demings. As noted, Plaintiff has abandoned any challenge to the district court order dismissing all claims against Officer Brunscheen.

20